**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN BEVERAGE
ASSOCIATION; CALIFORNIA
RETAILERS ASSOCIATION,
*Plaintiffs-Appellants*,

and

CALIFORNIA STATE OUTDOOR
ADVERTISING ASSOCIATION,
*Plaintiff*,

v.

CITY AND COUNTY OF SAN
FRANCISCO,
*Defendant-Appellee.*

No. 16-16072

D.C. No.
3:15-cv-03415-EMC

AMERICAN BEVERAGE
ASSOCIATION; CALIFORNIA
RETAILERS ASSOCIATION,
  *Plaintiffs*,

and

CALIFORNIA STATE OUTDOOR
ADVERTISING ASSOCIATION,
  *Plaintiff-Appellant*,

v.

CITY AND COUNTY OF SAN
FRANCISCO,
  *Defendant-Appellee*.

No. 16-16073

D.C. No.
3:15-cv-03415-EMC

OPINION

Appeals from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted En Banc September 25, 2018
Pasadena, California

Filed January 31, 2019

Before:  Sidney R. Thomas, Chief Judge, and Dorothy W.
Nelson, Susan P. Graber, William A. Fletcher, Marsha S.
Berzon, Sandra S. Ikuta, Mary H. Murguia, Morgan
Christen, Jacqueline H. Nguyen, Andrew D. Hurwitz,
and John B. Owens, Circuit Judges.

Opinion by Judge Graber;
Concurrence by Judge Ikuta;
Concurrence by Judge Christen;
Concurrence by Judge Nguyen

## SUMMARY[*]

### Civil Rights

The en banc court reversed the district court's denial of a preliminary injunction and remanded in an action challenging the City and County of San Francisco's Sugar-Sweetened Beverage Warning Ordinance, which requires health warnings on advertisements for certain sugar-sweetened beverages.

Plaintiffs, the American Beverage Association, California Retailers Association, and California State Outdoor Advertising Association, argued that the Ordinance violated their First Amendment right to freedom of speech. The en banc court, relying on *National Institute of Family & Life Advocates v. Becerra* (NIFLA), 138 S. Ct. 2361 (2018), concluded that Plaintiffs will likely succeed on the merits of their claim that the Ordinance is an "unjustified or unduly burdensome disclosure requirement[] [that] might offend the First Amendment by chilling protected commercial speech." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985). The en banc court determined that the remaining

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

preliminary injunction factors also weighed in Plaintiffs' favor.

Concurring, Judge Ikuta stated that because the Associations had shown a likelihood of prevailing on the merits and because the other factors for granting a preliminary injunction weighed in the Associations' favor, she agreed with the majority's conclusion that the district court abused its discretion by denying the Associations' motion for a preliminary injunction. But Judge Ikuta stated that because the majority failed to apply *NIFLA*'s framework for analyzing when government-compelled speech violates the First Amendment, she dissented from the majority's reasoning.

Concurring in part and concurring in the judgment, Judge Christen, joined by Chief Judge Thomas, agreed with the majority that *Zauderer*'s framework applied to the government-compelled speech at issue in this case. Judge Christen also agreed that the district court's decision must be reversed, but she would not reach the issue the majority relied upon. Judge Christen would reverse because the City and County of San Francisco could not show that the speech it sought to compel was purely factual.

Concurring in the judgment, Judge Nguyen disagreed with the majority's expansion of *Zauderer*'s rational basis review to commercial speech that is not false, deceptive, or misleading. Judge Nguyen stated that because the majority reached the right result under the wrong legal standard, she respectfully concurred only in the judgment.

## COUNSEL

Richard P. Bress (argued), George C. Chipev, Michael E. Bern, and Melissa Arbus Sherry, Latham & Watkins LLP, Washington, D.C.; Marcy C. Priedman, Latham & Watkins LLP, San Francisco, California; for Plaintiffs-Appellants.

Jeremy Michael Goldman (argued) and Wayne Snodgrass, Deputy City Attorneys; Dennis J. Herrera, City Attorney; Office of the City Attorney, San Francisco, California; for Defendant-Appellee.

Wencong Fa and Meriem L. Hubbard, Pacific Legal Foundation, Sacramento, California, for Amicus Curiae Pacific Legal Foundation.

Robert Corn-Revere, Ronald G. London, Davis Wright Tremaine LLP, Washington, D.C., for Amicus Curiae The Association of National Advertisers, Inc.

Warren Postman and Katheryn Comerford Todd, Litigation Center Inc., Washington, D.C.; Jeremy J. Broggi, Megan L. Brown, and Bert W. Rein, Wiley Rein LLP, Washington, D.C., for Amicus Curiae Chamber of Commerce of the United States of America.

Mark S. Chenoweth, Cory L. Andrews, and Richard A. Samp, Washington Legal Foundation, Washington, D.C., for Amicus Curiae Washington Legal Foundation.

Allison M. Zieve, Julie A. Murray, and Scott L. Nelson, Public Citizen Litigation Group, Washington, D.C., for Amicus Curiae Public Citizens, Inc.

Sophia TonNu, Thomas Bennigson, and Seth E. Mermin, Public Good Law Center, Berkeley, California; Sabrina Adler, Ian McLaughlin, and Benjamin D. Wing, Changelab Solutions, Oakland, California, for Amici Curiae American Heart Association, American Academy of Pediatrics, California, California Academy of Family Physicians, California Chapter of the American Association of Clinical Endocrinologists, California Endowment, California Medical Association, California Pan-Ethnic Health Network, Changelab Solutions, Community Health Partnership, Crossfit Foundation, Diabetes Coalition of California, Healthy Food America, Latino Coalition for a Healthy California, National Association of Chronic Disease Directors, National Association of Local Boards of Health, Network of Ethnic Physician Organizations, Nicos Chinese Health Coalition, Prevention Institute, Public Health Institute, Public Health Law Center, San Francisco Bay Area Physicians for Social Responsibility, San Francisco Community Clinic Consortium, San Francisco Medical Society, Southern California Public Health Association, and Strategic Alliance.

Rachel Bloomekatz, Gupta Wessler PLLC, Washington, D.C., for Amici Curiae American Cancer Society Cancer Action Network, Public Health Law Center, Action on Smoking & Health, African American Tobacco Control Leadership Council, American Lung Association, American Thoracic Society, Americas for Nonsmokers' Rights, Campaign for Tobacco-Free Kids, NAATPN, and Truth Initiative Foundation.

Maia C. Kats, Center for Science in the Public Interest, Washington, D.C., for Amicus Curiae Center for Science in the Public Interest.

Peter C. Tolsdorf and Linda E. Kelly, Manufacturers' Center for Legal Action, Washington, D.C.; J. Michael Connolly, Thomas R. McCarthy, and William S. Consovoy, Consovoy McCarthy Park PLLC, Arlington, Virginia; for Amicus Curiae National Association for Manufacturers.

Deborah R. White, Retail Litigation Center Inc., Arlington, Virginia; Gabriel K. Gillett, Jenner & Block LLP, Chicago, Illinois; Adam G. Unikowsky, Jenner & Block LLP, Washington, D.C., for Amicus Curiae Retail Litigation Center.

Catherine E. Stetson, Hogan Lovells US LLP, Washington, D.C., for Amicus Curiae Grocery Manufacturers Association.

**OPINION**

GRABER, Circuit Judge:

Plaintiffs American Beverage Association, California Retailers Association, and California State Outdoor Advertising Association challenge Defendant City and County of San Francisco's Sugar-Sweetened Beverage Warning Ordinance, City & Cty. of S.F., Cal., Bd. of Supervisors Ordinance No. 100-15, § 1 (June 16, 2015). The Ordinance requires health warnings on advertisements for certain sugar-sweetened beverages ("SSBs"). Plaintiffs argue that the Ordinance violates their First Amendment right to freedom of speech. Relying on the United States Supreme Court's decision in *National Institute of Family & Life Advocates v. Becerra* ("*NIFLA*"), 138 S. Ct. 2361 (2018), we conclude that Plaintiffs will likely succeed on the merits of their claim that the Ordinance is an "unjustified or unduly

burdensome disclosure requirement[] [that] might offend the First Amendment by chilling protected commercial speech." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985). The remaining preliminary injunction factors also weigh in Plaintiffs' favor. We therefore hold that the district court abused its discretion by denying Plaintiffs' motion for a preliminary injunction, and we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2015, Defendant enacted the Ordinance, which requires that certain SSB advertisements ("SSB Ads") include the following statement:

> WARNING: Drinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay. This is a message from the City and County of San Francisco.

City & Cty. of S.F., Cal., Health Code art. 42, div. I, § 4203(a) (2015). An "SSB Ad" covers

> any advertisement, including, without limitation, any logo, that identifies, promotes, or markets a Sugar-Sweetened Beverage for sale or use that is any of the following: (a) on paper, poster, or a billboard; (b) in or on a stadium, arena, transit shelter, or any other structure; (c) in or on a bus, car, train, pedicab, or any other vehicle; or (d) on a wall, or any other surface or material.

*Id.* § 4202. Under section 4202, though, an "SSB Ad" does not include advertising in or on: periodicals; television; electronic media; SSB containers or packaging; menus; shelf tags; vehicles used by those in the business of manufacturing, selling, or distributing SSBs; or logos that occupy an area of less than 36 square inches. *Id.* The Ordinance defines "SSB" as "any Nonalcoholic Beverage sold for human consumption, including, without limitation, beverages produced from Concentrate, that has one or more added Caloric Sweeteners and contains more than 25 calories per 12 ounces of beverage." *Id.* But "SSB" does not include drinks such as milk, plant-based milk alternatives, natural fruit and vegetable juices, infant formulas, and supplements. *Id.* The Ordinance provides detailed instructions regarding the form, content, and placement of the warning on SSB Ads, including a requirement that the warning occupy at least 20% of the advertisement and be set off with a rectangular border. *Id.* § 4203(b).

Defendant's stated purpose in requiring the warning is, among other reasons, to "inform the public of the presence of added sugars and thus promote informed consumer choice that may result in reduced caloric intake and improved diet and health, thereby reducing illnesses to which SSBs contribute and associated economic burdens." *Id.* § 4201. Failure to comply with the warning requirement can result in administrative penalties imposed by San Francisco's Director of Health. *Id.* § 4204(a).

Plaintiffs sued to prevent implementation of the Ordinance. The district court denied Plaintiffs' motion for a preliminary injunction. Concluding that Plaintiffs likely would not succeed on the merits of their First Amendment challenge, the district court held that the warning is not

misleading, does not place an undue burden on Plaintiffs' commercial speech, and is rationally related to a substantial governmental interest.  But the court stayed implementation of the Ordinance pending this timely interlocutory appeal.

A three-judge panel of this court reversed the district court's denial of a preliminary injunction, *Am. Beverage Ass'n v. City & County of San Francisco*, 871 F.3d 884 (9th Cir. 2017).  We then ordered that the case be reheard en banc, 880 F.3d 1019 (9th Cir. 2018).

JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction under 28 U.S.C. § 1292.

We review the denial of a preliminary injunction for abuse of discretion.  *Harris v. Bd. of Supervisors*, 366 F.3d 754, 760 (9th Cir. 2004).  A district court abuses its discretion if it rests its decision "on an erroneous legal standard or on clearly erroneous factual findings."  *United States v. Schiff*, 379 F.3d 621, 625 (9th Cir. 2004) (internal quotation marks omitted).  "We review conclusions of law de novo and findings of fact for clear error."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (internal quotation marks omitted).

DISCUSSION

A preliminary injunction is an extraordinary remedy that may be awarded only if the plaintiff clearly shows entitlement to such relief.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in

the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20.

## A. *Test for Analyzing a Claim of Compelled Speech*

We begin by considering Plaintiffs' likelihood of success on the merits of their First Amendment challenge. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."[1] U.S. Const. amend. I. Its protection is broad, and the Supreme Court has "been reluctant to mark off new categories of speech for diminished constitutional protection." *NIFLA*, 138 S. Ct. at 2372 (internal quotation marks omitted). But *NIFLA* also acknowledged that the Court has "applied a lower level of scrutiny to laws that compel disclosures in certain contexts," including cases analyzing the required disclosure of "factual, noncontroversial information in . . . 'commercial speech.'" *Id.*

The Ordinance regulates commercial speech and compels certain disclosures.[2] Therefore, in addressing Plaintiffs' claim, we first determine what level of scrutiny applies. The parties dispute whether we should analyze the Ordinance's compliance with the First Amendment under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S.

---

[1] The Due Process Clause of the Fourteenth Amendment incorporates the First Amendment against the states. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 749 n.1 (1976).

[2] Judge Ikuta's special concurrence discusses at length a proposition that no one disputes: that the warning is compelled speech, requiring a First Amendment analysis.

557 (1980), or under *Zauderer*, 471 U.S. 626.  We have discussed those two tests previously, stating that:

> Under *Central Hudson*, the government may restrict or prohibit commercial speech that is neither misleading nor connected to unlawful activity, as long as the governmental interest in regulating the speech is substantial. 447 U.S. at 564.  The restriction or prohibition must "directly advance the governmental interest asserted," and must not be "more extensive than is necessary to serve that interest." *Id.* at 566.  Under *Zauderer . . .* , the government may compel truthful disclosure in commercial speech as long as the compelled disclosure is "reasonably related" to a substantial governmental interest. *Zauderer*, 471 U.S. at 651.

*CTIA–The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1115 (9th Cir. 2017).[3]

In *NIFLA*, the Supreme Court applied the *Zauderer* test without deciding whether that test, in fact, applied.  *NIFLA*, 138 S. Ct. at 2376–77.  But before *NIFLA*, we examined a similar health and safety warning and held squarely that *Zauderer* provides the proper analytical framework for considering required warnings on commercial products:

---

[3] The Supreme Court vacated and remanded our opinion in *CTIA* for reconsideration in light of *NIFLA*.  *CTIA*, 138 S. Ct. 2708 (2018).  As will be evident from the text that follows, we reconsider relevant portions of *CTIA* here in light of *NIFLA* and see nothing in *NIFLA* that is inconsistent with those aspects of *CTIA* with which we agree in this opinion.

"[T]he government may compel truthful disclosure in commercial speech as long as the compelled disclosure is 'reasonably related' to a substantial governmental interest." *CTIA*, 854 F.3d at 1115. We rejected the argument that intermediate scrutiny—as required by *Central Hudson*, 447 U.S. 557, for situations in which speech is restricted or prohibited—should govern. *CTIA*, 854 F.3d at 1115–17. We also rejected the argument that *Zauderer* applies only to situations in which the government requires disclosures to prevent consumer deception, pointing out that we were joining the holdings of several of our sister circuits. *Id.* at 1116–17 (citing *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18 (D.C. Cir. 2014) (en banc); *Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509 (6th Cir. 2012); *N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114 (2d Cir. 2009); *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104 (2d Cir. 2001)).

*NIFLA* requires us to reexamine how we approach a First Amendment claim concerning compelled speech. But nothing in *NIFLA* suggests that *CTIA* was wrongly decided. To the contrary, *NIFLA* preserved the exception to heightened scrutiny for health and safety warnings. The Supreme Court made clear that it was not calling into "question the legality of health and safety warnings long considered permissible." *NIFLA*, 138 S. Ct. at 2376.[4]  *NIFLA* did not address, and *a*

---

[4] Judge Ikuta's special concurrence reads this portion of *NIFLA* to mean that only certain health and safety warnings (those of ancient origin) are excepted from heightened scrutiny. But the most natural reading of this passage in the Court's opinion is that required health and safety warnings, which have long been permitted, are still allowed. In this statement, the *NIFLA* majority was countering Justice Breyer's dissent, which lists examples of such warnings, including both mandatory advice concerning seat belts and mandatory advice about the availability of a

*fortiori* did not disapprove, the circuits' precedents, including *CTIA*, which have unanimously held that *Zauderer* applies outside the context of misleading advertisements. *See CTIA*, 854 F.3d at 1116–17 (citing cases from the D.C., Second, and Sixth Circuits). In short, we reaffirm our reasoning and conclusion in *CTIA* that *Zauderer* provides the appropriate framework to analyze a First Amendment claim involving compelled commercial speech—even when the government requires health and safety warnings, rather than warnings to prevent the deception of consumers. *CTIA*, 854 F.3d at 1117. We therefore proceed to apply *Zauderer* to Defendant's required warning.

B.  *Application of the* Zauderer *test*

The *Zauderer* test, as applied in *NIFLA*, contains three inquiries:  whether the notice is (1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome. A compelled disclosure accompanying a related product or service must meet all three criteria to be constitutional. *NIFLA*, 138 S. Ct. at 2372. Neither *NIFLA* nor any other Supreme Court precedent requires that we apply these criteria in any particular order. The *NIFLA* Court's analysis began with the question whether the notice was "unjustified or unduly burdensome." *Id.* at 2377 (citing *Zauderer*, 471 U.S. at 651). By following the same sequence, we do not suggest that courts *must* begin by analyzing whether a disclosure requirement is unjustified or unduly

_____

whooping cough vaccine, 138 S. Ct. at 2380–81. There is no indication that either of those required disclosures is of ancient origin or that the majority intended some health and safety warnings (if accurate, uncontroversial, and not unduly burdensome) to be precluded merely because the knowledge that the warnings convey is new.

burdensome, but we find it useful to begin with that prong here.  Defendant has the burden of proving that the warning is neither unjustified nor unduly burdensome.  *Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 146 (1994).  On this preliminary record, Defendant has not carried its burden.[5]

Defendant's argument that the border and 20% size requirements adhere to the best practices for health and safety warnings is unpersuasive.  We recognize that some tobacco and prescription warnings must occupy at least 20% of those products' labels or advertisements.  *Am. Beverage Ass'n v. City & County of San Francisco*, 187 F. Supp. 3d 1123, 1138–39 (N.D. Cal. 2016).  And Defendant's expert concluded that larger warnings are more effective.  But the record here shows that a smaller warning—half the size—would accomplish Defendant's stated goals.

Defendant's expert cited and discussed a study that examined a warning similar to that required by the Ordinance.[6]  That study used warnings covering only 10% of the image.  The expert concluded that the cited study "provides empirical support that the message content and

---

[5] Contrary to Judge Ikuta's characterization, we do not preclude Defendant from arguing that the Ordinance survives heightened scrutiny. Concurrence at 28.  Logically, though, if the warning does not meet a lower standard, it necessarily does not meet a higher standard.  *See NIFLA*, 138 S. Ct. at 2377 ("Even under *Zauderer*, a disclosure requirement cannot be 'unjustified or unduly burdensome.'" (quoting *Zauderer*, 471 U.S. at 651)).

[6] The study's warning read "Safety Warning:  Drinking beverages with added sugar[s] contributes to obesity, diabetes, and tooth decay," and included a border.

design of the San Francisco warning is associated [with] an improved understanding of health harms associated with overconsumption of SSBs and may reduce the purchase of SSBs—two of the primary objectives identified in the San Francisco ordinance."  The findings of that study thus undermine Defendant's position, because the findings suggest that the Ordinance's goals could be accomplished with a smaller warning.  On this record, therefore, the 20% requirement is not justified when balanced against its likely burden on protected speech.

In addition, the argument that the Ordinance incorporates best practices does not respond to the First Amendment balancing test that we must apply.  Although the disclosures in *NIFLA* were more onerous than the Ordinance's disclosure, similar concerns are present here:  Defendants have not shown that the contrasting rectangular border containing a warning that covers 20% of the advertisement does not "drown[] out" Plaintiffs' messages and "effectively rule[] out the possibility of having [an advertisement] in the first place." 138 S. Ct. at 2378 (internal quotation marks omitted).  On this record, therefore, the 20% requirement is not justified and is unduly burdensome when balanced against its likely burden on protected speech.

To be clear, we do not hold that a warning occupying 10% of product labels or advertisements necessarily is valid, nor do we hold that a warning occupying more than 10% of product labels or advertisements necessarily is invalid.  *See id.* ("We express no view on the legality of a similar disclosure requirement that is better supported or less burdensome.").  Rather, we hold only that, on this record, Defendant has not carried its burden to demonstrate that the Ordinance's requirement is not "unjustified or unduly

burdensome." *See id.* at 2377. The required warnings therefore offend Plaintiffs' First Amendment rights by chilling protected speech. *See id.* at 2378 ("[The notice] imposes an unduly burdensome disclosure requirement that will chill [the speaker's] protected speech.").

The Supreme Court made clear in *NIFLA* that a government-compelled disclosure that imposes an undue burden fails for that reason alone. *Id.* at 2377. Indeed, the Court ended its own analysis with that holding. *Id.* at 2378. We need not, and therefore do not, decide whether the warning here is factually accurate and noncontroversial.

The remaining factors of the preliminary injunction test also favor an injunction. Because Plaintiffs have a colorable First Amendment claim, they have demonstrated that they likely will suffer irreparable harm if the Ordinance takes effect. *See Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) ("A colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief." (internal quotation marks omitted)). Next, "[t]he fact that [Plaintiffs] have raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [Plaintiffs'] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (internal quotation marks omitted). Finally, we have "consistently recognized the significant public interest in upholding First Amendment principles." *Doe*, 772 F.3d at 583 (internal quotation marks omitted). Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks omitted).

In summary, Plaintiffs have met each of the requirements for a preliminary injunction. We therefore conclude that the

district court abused its discretion by denying Plaintiffs' motion.

**REVERSED** and **REMANDED**.

---

IKUTA, Circuit Judge, dissenting from most of the reasoning, concurring in the result:

In *National Institute of Family & Life Advocates v. Becerra* (*NIFLA*), the Supreme Court provided a framework for analyzing First Amendment challenges to government-compelled speech. 138 S. Ct. 2361 (2018). Under this framework, a government regulation that compels a disclosure (like the San Francisco ordinance in this case) is a content-based regulation of speech, which is subject to heightened scrutiny under the First Amendment unless the *Zauderer* exception applies. The majority fails to follow this analytical framework and makes several crucial errors. I therefore dissent.

I

*NIFLA* broke new ground on several key issues. Although the Court has previously considered the constitutionality of government regulations requiring lawyers to disclose certain information in their advertisements, *see Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 650–51 (1985); *see also Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 250–52 (2010); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 457–59 (1978), *NIFLA* is the first Supreme Court case to apply *Zauderer* to commercial speech more generally.

*NIFLA* considered the constitutionality of a California statute that required clinics that primarily served pregnant women to post government-drafted notices. *NIFLA*, 138 S. Ct. at 2368. State-licensed clinics were required to post a notice that stated: "California has public programs that provide immediate free or low-cost access to comprehensive family planning services (including all FDA-approved methods of contraception), prenatal care, and abortion for eligible women." *Id.* at 2369 (referred to as the "licensed notice"). Unlicensed clinics were required to post a notice stating that the "facility is not licensed as a medical facility by the State of California and has no licensed medical provider who provides or directly supervises the provision of services." *Id.* at 2370 (referred to as the "unlicensed notice"). Two crisis pregnancy centers, among other plaintiffs, brought suit, claiming that both the licensed and unlicensed notices violated their First Amendment rights.

*NIFLA* began by making two important contributions to First Amendment jurisprudence. First, in its consideration of the two government disclosure requirements, *NIFLA* established, for the first time, that government-compelled speech is a content-based regulation of speech.[1] The Court explained that "[b]y compelling individuals to speak a particular message," the licensed notices "alter[ed] the content of [their] speech" and thus were content-based regulations. *Id.* at 2371. Such content-based regulations "are

---

[1] This holding arguably supersedes *Zauderer*, which appeared to apply rational basis review to laws requiring attorneys to make certain disclosures, stating, "we hold that an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." *See Zauderer*, 471 U.S. at 651.

presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.*

Second, *NIFLA* made clear that governments may not "impose content-based restrictions on speech without persuasive evidence of a long (if heretofore unrecognized) tradition to that effect." *Id.* (cleaned up).  The Court therefore rejected a line of circuit court cases holding that professional speech is exempt "from the rule that content-based regulations of speech are subject to strict scrutiny." *Id.* at 2371–72. In doing so, *NIFLA* overruled our opinion in *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014), as well as a line of decisions in the Third and Fourth Circuits, *see, e.g.*, *King v. Governor of N.J.*, 767 F.3d 216 (3d Cir. 2014); *Moore-King v. Cty. of Chesterfield*, 708 F.3d 560 (4th Cir. 2013).  Further, *NIFLA* emphasized that "[t]his Court has been reluctant to mark off new categories of speech for diminished constitutional protection." *Id.* at 2372 (internal quotation marks omitted).  While the Court did not "question the legality of health and safety warnings long considered permissible," *id*. at 2376, the Court did not create a standalone exception for such content-based restrictions. Instead, *NIFLA* reiterated that a category of speech is exempt from heightened scrutiny under the First Amendment only if the state can show a "long (if heretofore unrecognized) tradition to that effect." *Id.* at 2372.

Against this backdrop, the Court established its analytic framework.  A government regulation "compelling individuals to speak a particular message" is a content-based regulation that is subject to strict scrutiny, subject to two exceptions. *Id.* at 2372–73.  First, the Court held that its precedents (most notably *Zauderer*, 471 U.S. at 650) afforded

more deferential review to "some laws that require professionals to disclose factual, noncontroversial information in their 'commercial speech.'" *NIFLA*, 138 S. Ct. at 2372. Second, states may regulate professional conduct, even though that conduct incidentally involves speech, such as through informed consent requirements. *Id.*; *see also Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 884 (1992).

To determine whether the *Zauderer* exception applies, a court must consider whether the compelled speech governs only [1] "commercial advertising" and requires the disclosure of [2] "purely factual and [3] uncontroversial information about [4] the terms under which . . . services will be available." *NIFLA*, 138 S. Ct. at 2372 (internal quotation marks and citations omitted). If the government regulation meets those requirements, the regulation should be upheld unless it is [5] "unjustified or [6] unduly burdensome." *Id.*

If the regulation does not qualify for the *Zauderer* exception, the regulation must survive heightened scrutiny to avoid violating the First Amendment. *Id.* at 2372. The Court did not decide whether strict scrutiny or intermediate scrutiny applies to government-compelled commercial disclosures that do not fall under the *Zauderer* exception. *See id.*

Applying this legal framework to both the licensed and unlicensed notice requirements, the Court held that neither regulation survived First Amendment scrutiny. The Court began by considering the notices required for licensed clinics. *Id.* at 2371–72. It first determined that the *Zauderer* exception did not apply for two reasons. *Id.* at 2372. First, the licensed notice was "not limited to purely factual and uncontroversial information about the terms under which . . .

services w[ould] be available," because the notice "in no way relate[d] to the services that licensed clinics provide."  *Id.* (internal quotation marks and citations omitted).  Second, the notice was not limited to uncontroversial information, because abortion is "anything but an 'uncontroversial' topic." *Id.*

Because the *Zauderer* exception did not apply (and because the exception applicable to regulations of conduct that incidentally burdens speech, such as informed consent requirements, did not apply, *see id.* at 2373–74), the Court then considered whether the licensed notice requirement survived heightened scrutiny.  The Court declined to determine whether strict scrutiny or intermediate scrutiny applied to the licensed notice, because that notice failed even under intermediate scrutiny.  *Id.* at 2375.  Even assuming the state had a substantial state interest in providing low-income women with information about state-sponsored services, the Court held that the licensed notice was not sufficiently drawn to achieve this interest:  it was underinclusive, imprecisely drawn, and could have been replaced with less intrusive alternatives.  *Id.* at 2375–76.

Turning to the notice required for unlicensed clinics, the Court again began by considering the applicability of the *Zauderer* exception.  *Id.* at 2376–77.  Because the unlicensed notice stated only that the "facility is not licensed as a medical facility by the State of California and has no licensed medical provider who provides or directly supervises the provision of services," the Court did not need to address the threshold *Zauderer* factors; it was apparent that the unlicensed notice required the disclosure of purely factual and uncontroversial information about the terms under which services would be available.  *See id.* at 2377.  The Court

instead focused on whether the notice requirement was unjustified or unduly burdensome. *See id.* The Court concluded that California had not satisfied its burden of proving that the unlicensed notice requirement satisfied these two prongs, because "California has not demonstrated any justification for the licensed notice that is more than "purely hypothetical,'" *id.*, and the notice unduly burdened protected speech, *id.* at 2377–78. The Court held that the notice was underinclusive because it covered "a curiously narrow subset of speakers." *Id.* at 2377. Moreover, the notice would have a chilling effect because the statute required that the government-drafted statement be in "larger text [than surrounding text] or contrasting type or color" and be posted in as many as 13 different languages. *Id.* at 2378. These requirements would "drown[] out the facility's own message." *Id.*

In contrast to its analysis of the licensed notice, the Court did not address the question whether the unlicensed notice requirement survived heightened scrutiny; there was no need to do so, because California did "not explain how the unlicensed notice could satisfy any standard other than *Zauderer*." *Id.* at 2377 n.3. In other words, because the state did not make a colorable argument that the unlicensed notice requirement would survive heightened scrutiny, there was no dispute that the notice requirement violated the unlicensed clinics' First Amendment rights unless the *Zauderer* exception applied. Because *Zauderer* did not apply, the unlicensed notice requirement was invalid, and the Court did not have to proceed further.

## II

Under *NIFLA*, San Francisco's ordinance requiring companies who advertise certain sugar-sweetened beverages on billboards within San Francisco to include a warning message constitutes a "content-based regulation of speech" subject to heightened scrutiny unless an exception applies.

Turning first to the *Zauderer* exception, a court should consider whether the regulation requires the disclosure of purely factual and uncontroversial information about the terms under which services will be available. The required warning states:

> WARNING: Drinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay. This is a message from the City and County of San Francisco.

S.F. Health Code § 4203(a).

This warning does not provide "purely factual and uncontroversial information about the terms under which . . . services will be available." *Cf. NIFLA*, 138 S. Ct. at 2372; *Zauderer*, 471 U.S. at 651. The factual accuracy of the warning is disputed in the record. Among other things, the warning is contrary to statements by the FDA that added sugars are "generally recognized as safe," 21 C.F.R. §§ 184.1, 184.1866, and "can be a part of a healthy dietary pattern" when not consumed in excess amounts, 81 Fed. Reg. 33,742, 33,760 (May 27, 2016). Moreover, as Judge Christen's concurrence points out, the disclosure is literally false with respect to Type I diabetes. MBC Op. at 34–35. Although *NIFLA* did not define "uncontroversial," the warning here

requires the advertisers to convey San Francisco's one-sided policy views about sugar-sweetened beverages. The record shows this is a controversial topic, and therefore, the ordinance does not qualify as "uncontroversial information" under the third prong of *NIFLA*. Finally, the warning does not relate to the terms on which the advertisers provide their services. The warning merely relates to the consumption of sugar-sweetened beverages, which is a product rather than a service, and does not address the terms on which that product is provided.

Even if the warning requirement provided factual and uncontroversial information about the terms of service, the requirement would fail because it is unduly burdensome. As the majority acknowledges, the warning's size, required font size, contrasting color, and other requirements contribute to the severity of the warning's burden. Maj. Op. at 15–16. *NIFLA* makes clear that requiring commercial speakers, like the unlicensed clinics in *NIFLA*, to fight a government-scripted message that drowns out their own advertisements is unduly burdensome. Moreover, the record indicates that the warning label would have a chilling effect, causing some manufacturers of sugar-sweetened beverages to cease advertising on covered media. Therefore, the *Zauderer* exception does not apply.

Nor does any other exception apply.[2] The majority is wrong to the extent it suggests that "*NIFLA* preserved the exception to heightened scrutiny for health and safety warnings." Maj. Op. at 13. *NIFLA* made clear that only

---

[2] Obviously, the warning requirement does not constitute a regulation of professional conduct that incidentally involves speech, such as informed consent requirements.

"health and safety warnings long considered permissible" would be excepted.  *See* 138 S. Ct. at 2376.  California has made no showing that the warning here was "long considered permissible," nor could it do so.  The types of speech exempt from First Amendment protection are "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem," from 1791 to present.  *See United States v. Stevens*, 559 U.S. 460, 468–69 (2010).  These limited exceptions include defamation, obscenity, and fraud, *see id.*, not newly invented classes of speech, *see NIFLA*, 138 S. Ct. at 2371–72.  *NIFLA* did not specify what sorts of health and safety warnings date back to 1791, but warnings about sugar-sweetened beverages are clearly not among them.  Indeed, the First Amendment applies even to products that pose more obvious threats to health and safety, such as cigarettes.   In a case involving restrictions on cigarette advertisements, the Court held that the "First Amendment also constrains state efforts to limit the advertising of tobacco products, because so long as the sale and use of tobacco is lawful for adults, the tobacco industry has a protected interest in communicating information about its products and adult customers have an interest in receiving that information." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 571 (2001).  Given this context, our precedents creating a First Amendment exception for government-compelled health and safety warnings, *see CTIA–The Wireless Ass'n v. City of Berkeley, Calif.*, 854 F.3d 1105, 1116–17 (9th Cir. 2017), *vacated*, 138 S. Ct. 2708 (2018), are no more persuasive than our precedents creating a First Amendment exception for professional speech, which were struck down by *NIFLA*.  In neither case is there a long tradition of government regulation dating back to 1791.

Because *Zauderer* does not apply here, *NIFLA* directs us to consider whether the ordinance survives heightened scrutiny. Under intermediate scrutiny, even assuming that there is a substantial state interest in warning the public of health dangers from drinking sugar-sweetened beverages, the warning requirement is not sufficiently drawn to that interest. First, the requirement is underinclusive both as to the covered products and as to the means of advertisement. The ordinance does not even apply to all sugar-sweetened beverages, much less all sugar-sweetened products. Moreover, it applies to posters and billboards, but not digital ads or other types of media. Like the notices in *NIFLA*, the warning requirement is "wildly underinclusive." *See* 138 S. Ct. at 2367. Second, San Francisco could disseminate health information by other, less burdensome means, such as a less intrusive notice or a public health campaign. *Cf. id.* at 2376. Because the warning requirement is not narrowly drawn, it does not survive even intermediate scrutiny. Thus, it is not necessary to determine whether strict or intermediate scrutiny applies here.

## III

While the majority correctly concludes that the advertisers have shown a likelihood of prevailing on the merits of their First Amendment claims, the majority fails to follow the analytic framework set out in *NIFLA* and makes several crucial errors.

First, the majority errs by skipping over the threshold question regarding *Zauderer*'s applicability, namely whether the notice requirement applies to commercial advertising and requires the disclosure of purely factual and uncontroversial information about the terms under which services will be

available.  Despite focusing primarily on the undue burden prong, the majority fails to provide any guidance regarding when a warning is unjustified or unduly burdensome.  Instead of following *NIFLA* in considering the totality of the requirements of the unlicensed notice and their effect on the speaker (there, the clinics) to conclude that the unlicensed notice was unduly burdensome, *see* 138 S. Ct. at 2378, the majority seems to suggest that the test is whether a smaller warning would accomplish San Francisco's stated goals. Maj. Op. at 15–16.

Most important, the majority errs by failing to consider whether San Francisco's ordinance could be upheld under heightened scrutiny even if the *Zauderer* exception does not apply.  The majority concedes that it does not "preclude [San Francisco] from arguing that the Ordinance survives heightened scrutiny."  Maj. Op. at 15 n.5.  And here, San Francisco has done just that, arguing vigorously that its ordinance survives intermediate scrutiny.  The majority fails to address this argument, apparently on the ground that "logically" any such argument would be futile because "if the warning does not meet a lower standard, it necessarily does not meet a higher standard."  Maj. Op. at 15 n.5.  This reasoning is flawed.  A government regulation, for instance, may require a commercial speaker to include images of dying cancer patients on cigarette packages.  *See, e.g.*, Required Warnings for Cigarette Packages and Advertisements, 75 Fed. Reg. 69,524, 69,533 (Nov. 12, 2010) (proposed rule). While a court might conclude that such compelled speech is not "purely factual and uncontroversial," the court might nevertheless conclude that the regulation meets the test under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 563–65 (1980) (assuming this case provides the applicable test), because the

government has a substantial interest in discouraging smoking, the regulation directly and materially advances the interest, and the restriction is narrowly tailored to discourage young people from smoking (based on expert opinion).  In any event, the majority is bound by *NIFLA*, which requires courts to consider such arguments:  *NIFLA* applied heightened scrutiny to the licensed notice and indicated that it would have applied heightened scrutiny to the unlicensed notice had California made any arguments on that point.  *See NIFLA*, 138 S. Ct. at 2377 n.3.  The majority's failure to address San Francisco's argument is therefore contrary to Supreme Court direction.

Because the Associations have shown a likelihood of prevailing on the merits and because the other factors for granting a preliminary injunction weigh in the Associations' favor, I agree with the majority's conclusion that the district court abused its discretion by denying the Associations' motion for a preliminary injunction.  But because the majority fails to apply *NIFLA*'s framework for analyzing when government-compelled speech violates the First Amendment, I dissent from the majority's reasoning.

---

CHRISTEN, Circuit Judge, joined by THOMAS, Chief Judge, concurring in part and concurring in the judgment:

I agree with the majority that *Zauderer*'s framework applies to the government-compelled speech at issue in this case.  *See Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985).  I also agree that the district court's decision must be reversed, but I would not reach the issue the majority relies upon.  I would reverse because the City and

County of San Francisco cannot show that the speech it seeks to compel is "purely factual[.]"  *Id.*  For this reason, San Francisco's proposed warning fails what should be the threshold inquiry in this case, and it violates the First Amendment.

*Zauderer* considered an attorney's First Amendment challenge to a state bar rule.  *Id.* at 632–33, 659 n.3.  For attorneys advertising that their clients would not pay fees if their lawsuits were unsuccessful, the rule required disclosure that the clients would still be liable for litigation costs.  *Id.* The Court held that the bar rule did not violate the First Amendment.  In reaching this result, the Court observed that "disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech[.]" *Id.* at 651.  It was critical to the Court's decision that the bar rule was intended to prevent consumer deception; the Court stressed that the rule required only the inclusion of "*purely factual* and uncontroversial information about the terms under which [an attorney's] services will be available."  *Id.* (emphasis added).

Any sort of compelled speech potentially infringes First Amendment rights, and case law approves government-mandated messages only in very limited contexts.  *See, e.g.*, *Milavetz, Gallop & Milavetz*, *P.A. v. United States*, 559 U.S. 229, 249–50 (2010) (upholding requirement that lawyers disclose certain information in advertisements to prevent consumer deception); *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 310 (1st Cir. 2005) (per curiam) (upholding requirement that pharmacy benefit managers disclose conflicts of interest and certain financial arrangements)*; Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 113–15 (2d Cir. 2001) (upholding labeling requirement intended to increase

consumer awareness about the amount of mercury in products).  Where a government-compelled message "does not require the disclosure of purely factual information" and instead "compels the carrying of the [government's] controversial opinion[,]" it is clearly "unconstitutionally compelled speech[.]"  *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 953 (9th Cir. 2009), *aff'd sub nom. Brown v. Entm't Merch. Ass'n*, 564 U.S. 786 (2011). *Zauderer* and subsequent case law leave no doubt that any government-compelled speech must be, at the very least, factually accurate.

The majority acknowledges that *National Institute of Family & Life Advocates v. Becerra* ("*NIFLA*"), 138 S. Ct. 2361 (2018), does not require courts to begin the *Zauderer* analysis by addressing whether the compelled speech is unjustified or unduly burdensome; *NIFLA* did not modify *Zauderer*. *NIFLA* struck down a California law requiring that clinics primarily serving pregnant women provide certain notices.  *See id.* at 2378.  Licensed clinics were required to post notices that California provides free or low-cost services, including abortions, and unlicenced clinics were required to give notice that they were not licensed to provide medical services.  *Id.* at 2369.  *NIFLA* held that the speech imposed upon licensed clinics did not satisfy *Zauderer* because, unlike the disclosure required for attorneys' services ads, the notice regarding the availability of abortion services did not "relate[] to the services that licensed clinics provide[d]," and it concerned the controversial topic of abortion.  *Id.* at 2372. The notice that unlicensed clinics were compelled to post violated the First Amendment because, "[e]ven under *Zauderer*, a disclosure requirement cannot be 'unjustified or unduly burdensome,'" and the Court ruled that California did not demonstrate any justification for the compelled speech

that was more than purely hypothetical.  *Id.* at 2377 (quoting *Zauderer*, 471 U.S. at 651).

Here, our court holds that *Zauderer* requires compelled speech to be (1) purely factual; (2) noncontroversial; and (3) not unjustified or unduly burdensome.  Additionally, the compelled speech must relate to the speaker's services or products.  Where I differ is with the majority's application of the test.  The majority skips whether San Francisco's compelled warning is factually accurate and jumps straight to asking whether the proposed warning is "unjustified or unduly burdensome."  The court reasons that *NIFLA* made clear that "a government-compelled disclosure that imposes an undue burden fails for that reason alone," but the same is true of *Zauderer*'s other requirements.  The majority's decision to follow *NIFLA* and address the "unduly burdensome" question first overlooks that there was no dispute in *NIFLA* about the factual accuracy of the compelled speech.  We have no precedent addressing a government proposal to appropriate commercial advertising space for the purpose of conveying a factually inaccurate message, but where, as here, the parties disagree about the veracity of compelled speech, the court should begin by asking whether the government's message is objectively true.  Deciding whether a compelled message is controversial or unduly burdensome will often entail much more subjective judgments.  If compelled speech is not factually accurate, the court's inquiry should end.

San Francisco seeks to require that advertisements for sugar-sweetened beverages include the following:

> WARNING:  Drinking beverages with added sugar(s) contributes to obesity, diabetes, and

> tooth decay.  This is a message from the City
> and County of San Francisco.

To survive the "purely factual" part of *Zauderer*'s test, the statement that beverages with added sugars "contribute[] to" obesity, diabetes, and tooth decay, must be true—yet there is no evidence that it is.  To the contrary, "diabetes" is an umbrella term referring to both type 1 diabetes (sometimes called juvenile-onset or insulin-dependent diabetes) and type 2 diabetes.  Rather than using the generic term "diabetes," medical studies investigating causation are careful to differentiate between the two forms of the disease.[1]  The precise causes of type 1 diabetes are unknown, but genetic and environmental factors, including viruses, are thought to contribute to its development.[2]  Research demonstrates a correlation between the consumption of sugar-sweetened beverages and the development of type 2 diabetes,[3] but San Francisco has not shown that there is any association at all between consumption of sugar-sweetened beverages and the development of type 1 diabetes.  Ironically, the American Diabetes Association directly addresses this on its "Diabetes

---

[1] *See, e.g.*, M. Vanstone et al., *Patient Perspectives on Quality of Life with Uncontrolled Type 1 Diabetes Mellitus: A Systematic Review and Qualitative Meta-synthesis*, 15 ONTARIO HEALTH TECH. ASSESSMENT SERIES 1 (2015); Vasanti S. Malik et al., *Sugar-Sweetened Beverages, Obesity, Type 2 Diabetes Mellitus, and Cardiovascular Disease Risk*, 121 CIRCULATION 1356 (2010).

[2] *See Type 1 Diabetes: Symptoms & Causes*, MAYO CLINIC (Aug. 7, 2017), https://www.mayoclinic.org/diseases-conditions/type-1-diabetes/symptoms-causes/syc-20353011.

[3] *See, e.g.*, Vasanti S. Malik et al., *Sugar-Sweetened Beverages and Risk of Metabolic Syndrome and Type 2 Diabetes: A Meta-Analysis*, 33 DIABETES CARE 2477 (2010).

Myths" webpage, stating that type 1 diabetes is not caused by sugar, it "is caused by genetics and unknown factors that trigger the onset of the disease."[4]  The message that drinking sugar-sweetened beverages "contributes to" diabetes (including type 1 diabetes) is not only not "purely factual and uncontroversial," it is devoid of scientific support.  *See Zauderer*, 471 U.S. at 651.

In this particular case, it cannot be doubted that the government's proposed message is controversial: it would require that manufacturers, retailers, and advertisers include in their ads, under a banner that begins "Warning," the message that their product contributes to diabetes even though the causes of type 1 diabetes are not actually known.[5] Thus, in addition to being factually inaccurate, San Francisco's proposed warning also fails *Zauderer*'s requirement that the compelled speech be uncontroversial. Though I would strike the warning under either the first or second part of *Zauderer*'s test, my view is that, given the facts of this case, we should treat *Zauderer*'s "purely factual" inquiry as the threshold question because it provides a much more objective basis for disqualifying San Francisco's compelled speech.  It is possible to envision a scenario in which the "unjustified or unduly burdensome" inquiry could provide a more objective basis for striking a government-mandated message.  For example, that could occur if determining the accuracy of a proposed message was not as

---

[4]  *See Diabetes Myths*, AMERICAN DIABETES ASSOC., http://www.diabetes.org/diabetes-basics/myths/ (last updated Aug. 20, 2018).

[5] *See Diabetes: Symptoms & Causes*, MAYO CLINIC (Aug. 8, 2018), https://www.mayoclinic.org/diseases-conditions/diabetes/symptoms-causes/syc-20371444.

cut-and-dried as it is here, or if the government tried to commandeer the majority of available ad space.  This is not one of those cases.  Because San Francisco's compelled warning undeniably fails *Zauderer*'s "purely factual" hurdle, we should not reach whether the message is uncontroversial or unduly burdensome; both of those inquiries require the court to make more subjective judgments.

San Francisco argues that its warning must not be read too literally, and that consumers will understand that its warning refers to type 2 diabetes.  But the contention that a reasonable person would understand San Francisco's intended message is in tension with the goal of having a public health message understood by the maximum number of consumers, not just those with sophisticated levels of health literacy.  Because the message would be conveyed to sophisticated and unsophisticated consumers, we must read it literally.

Relatedly, San Francisco acknowledges that not every consumer of sugary drinks will become obese or suffer from tooth decay or diabetes.  It argues that readers will understand that its warning is intended to convey a community-wide message: that consuming sugar-sweetened beverages will lead to more instances of obesity, diabetes, and tooth decay within the City and County as a whole.  But even if the qualifier "may" is read into the message, and the warning is understood as "sugary drinks may contribute to obesity, diabetes and tooth decay on a community-wide basis," it remains untrue with regard to type 1 diabetes.

Finally, San Francisco's compelled message is problematic because it suggests that sugar is always dangerous for diabetics.  In fact, consuming sugar-sweetened beverages can be medically indicated for a type 1 diabetic

when there are signs of hypoglycemia, a complication of type 1 diabetes, because drinking fruit juice or soda raises blood sugar levels quickly.[6]

Insisting that compelled speech be purely factual may seem persnickety, but there are significant constitutional implications whenever the government seeks to control our speech.  There are also societal consequences to inaccurate government-mandated messages.  In one study, over eighty percent of parents of children with type 1 diabetes and over seventy percent of patients with type 1 diabetes, reported that they are stigmatized, most commonly by the perception that diabetes is a character flaw or the result of a failure in personal responsibility.[7]

San Francisco may be commended for aiming to address serious and growing public health problems, but by compelling speech that is not factually accurate, it runs afoul of *Zauderer*'s caution—"in some instances compulsion to speak may be as violative of the First Amendment as prohibitions on speech." *Zauderer*, 471 U.S. at 650.  When the government takes the momentous step of mandating that its message be delivered by private parties, it is exceptionally important that the compelled speech be purely factual.

For these reasons, though I reach the same result as the majority, I would hold that the warning San Francisco seeks

---

[6] *See Type 1 Diabetes: Diagnosis & Treatment*, MAYO CLINIC (Aug. 7, 2017), https://www.mayoclinic.org/diseases-conditions/type-1-diabetes/diagnosis-treatment/drc-20353017.

[7] *See* Nancy F. Liu et al., *Stigma in People with Type 1 or Type 2 Diabetes*, 35 CLINICAL DIABETES J. 27 (2017).

to compel fails the threshold requirement of factual accuracy, and end the *Zauderer* analysis there.

---

NGUYEN, Circuit Judge, concurring in the judgment:

In *Central Hudson*, the Supreme Court held that regulation of commercial speech is evaluated under an intermediate scrutiny standard. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980) (requiring that commercial speech regulation "directly advances" a "substantial" governmental interest and "is not more extensive than is necessary to serve that interest"). Prior to applying this standard, however, courts must first determine whether the speech at issue "is false, deceptive, or misleading." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638 (1985); *see Central Hudson*, 447 U.S. at 566. If the regulation addresses speech that falls into one of these categories, then *Zauderer*'s rational basis test applies. *See Zauderer*, 471 U.S. at 651 (holding that disclosure requirements comport with the First Amendment "as long as [they] are reasonably related to the State's interest *in preventing deception of consumers*" (emphasis added)). With almost all other types of regulations,[1] "the government's power is more circumscribed," *Central Hudson*, 447 U.S. at 564, and *Central Hudson*'s intermediate scrutiny applies.

---

[1] Presumably, the rational basis test also applies to "commercial speech related to illegal activity," *Cent. Hudson*, 447 U.S. at 564, which, like other deceptive speech, deserves less constitutional protection, *see id.* at 563–64.

I disagree with the majority's expansion of *Zauderer*'s rational basis review to commercial speech that is not false, deceptive, or misleading.  In the majority's view, *Zauderer* applies to regulations requiring public health disclosures.  But it is the commercial message's accuracy—not its completeness—that demarcates the boundary between *Central Hudson*'s intermediate scrutiny and *Zauderer*'s rational basis test.  "The First Amendment's concern for commercial speech is based on the informational function of advertising."  *Id.* at 563.  "Even when advertising communicates only an incomplete version of the relevant facts, the First Amendment presumes that some accurate information is better than no information at all."[2]  *Id.* at 562.

The Supreme Court stressed that "*Zauderer* governs our review" rather than *Central Hudson* when a statute is "directed at *misleading* commercial speech."  *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 (2010) (emphasis in original).  That the "required disclosures are intended to combat the problem of inherently misleading commercial advertisements" is one of the "essential features of the rule at issue in *Zauderer*."  *Id.* at 250.  By treating the "false or misleading" requirement as non-essential, the majority invites reversal.

---

[2] The analysis does not differ simply because *Central Hudson* involved prohibited content and the instant case involves mandated content.  A law compelling the publication of certain content "operates as a command in the same sense as a statute or regulation forbidding [a business] to publish specified matter."  *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 256 (1974); *see also Wooley v. Maynard*, 430 U.S. 705, 714 (1977) ("[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all.").

The Supreme Court recently had the opportunity to expand *Zauderer*'s application beyond deceptive speech but declined to do so. *See Nat'l Inst. of Family & Life Advocates v. Becerra* ("*NIFLA*"), 138 S. Ct. 2361, 2376–77 (2018). Instead, the Court reiterated its "reluctan[ce] to mark off new categories of speech for diminished constitutional protection." *NIFLA*, 138 S. Ct. at 2372 (quoting *Denver Area Educ. Telecommc'ns Consortium, Inc. v. FCC*, 518 U.S. 727, 804 (1996) (Kennedy, J., dissenting in part, concurring in judgment in part, and dissenting in part)). The Court was "especially reluctant to 'exempt a category of speech from the normal prohibition on content-based restrictions.'" *Id.* (quoting *United States v. Alvarez*, 567 U.S. 709, 722 (2012) (plurality opinion)) (alteration in *NIFLA* omitted).

The majority's application of *Zauderer* to San Francisco's sugary beverage ordinance is particularly troubling given that it regulates speech based on content. The ordinance applies to "any advertisement . . . that identifies, promotes, or markets a Sugar-Sweetened Beverage for sale or use" in specified media. S.F. Health Code § 4202. To the extent San Francisco is concerned about the health effects of sugar in food and beverages, its focus on a specific subset of sugar-laden products is not evenhanded. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2232 (2015). And a requirement for any vendor of sugary products to convey a particular message "is a content-based regulation of speech." *NIFLA*, 138 S. Ct. at 2371. While San Francisco's goal of reducing obesity is laudable, the appropriate level of scrutiny does not turn on the government's good intent.

I join my colleagues who have previously disagreed with applying *Zauderer* outside the context of false and misleading speech, *see CTIA–The Wireless Ass'n v. City of Berkeley*,

854 F.3d 1105, 1125 n.2 (9th Cir. 2017) (Friedland, J., concurring in part and dissenting in part) (suggesting that "*Zauderer* applies only when the government compels a truthful disclosure to counter a false or misleading advertisement"), *vacated and remanded for reconsideration in light of NIFLA*, 138 S. Ct. 2708 (2018), and I share their concerns that our current case law will lead to "a proliferation of warnings and disclosures compelled by local municipal authorities" that have "only a tenuous link to a 'more than trivial' government interest," *CTIA*, 873 F.3d 774, 777 (9th Cir. 2017) (Wardlaw, J., dissenting from denial of reh'g en banc).

Because the majority reaches the right result under the wrong legal standard, I respectfully concur only in the judgment.