**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMALGAMATED TRANSIT UNION
LOCAL 1015,

*Plaintiff-Appellee*,

v.

SPOKANE TRANSIT AUTHORITY,
*Defendant-Appellant.*

No. 17-35955

D.C. No.
2:17-cv-00053-
JLQ

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Justin L. Quackenbush, District Judge, Presiding

Argued and Submitted March 5, 2019
Seattle, Washington

Filed July 2, 2019

Before: Ronald M. Gould and Richard A. Paez, Circuit
Judges, and Dean D. Pregerson,* District Judge.

Opinion by Judge Paez

---

*The Honorable Dean D. Pregerson, United States District Judge
for the Central District of California, sitting by designation.

## SUMMARY[**]

### First Amendment

The panel affirmed the district court's judgment in favor of a union in a case involving the union's challenge to the Spokane Transit Authority ("STA")'s decision, under its advertising policy, not to run a proposed advertisement from the union on STA's buses.

The panel affirmed the district court's holding that the STA unreasonably rejected the proposed ad in violation of the union's First Amendment rights. The panel declined to accept the First and Sixth Circuit's approaches of giving deference to a transit agency's application of its advertising policy. The panel held that the STA's bus advertising program was classified as a "limited public forum" which allowed content-based restrictions as long as they were reasonable and viewpoint neutral.

The panel applied the three-part test for a limited public forum to review STA's decision to exclude the union's ad under "public issue" advertising. First, the panel held that the policy was reasonable in light of the forum because STA's concern with engaging in matters of public debate was related to the purpose of running an efficient and profitable transit system. Second, the panel held that STA's standard lacked objective criteria to provide guideposts for determining what constituted prohibited "public issue"

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

advertising.    Third, the panel held that, based on an independent review of the record, STA's application of its "public issue" advertising ban to exclude the union's proposed ad was unreasonable.

Finally, the panel held that because the union's ad promoted an organization that engaged in commercial activity, STA unreasonably applied its "commercial and promotional advertising" policy to reject the union's ad.

## COUNSEL

James Andrew McPhee (argued) and John T. Drake, Witherspoon Brajcich McPhee PLLC, Spokane, Washington, for Defendant-Appellant.

Michael Persoon (argued), Despres Schwartz & Geoghegan Ltd., Chicago, Illinois, for Plaintiff-Appellee.

## OPINION

PAEZ, Circuit Judge:

This case concerns a First Amendment challenge by the Amalgamated Transit Union Local 1015 ("ATU") to the Spokane Transit Authority ("STA")'s decision, under its advertising policy, not to run a proposed advertisement from the union on STA's buses.  After a court trial, the district court held that STA unreasonably rejected the proposed ad in violation of ATU's First Amendment rights, enjoined STA from rejecting ATU's ad and awarded attorneys' fees to ATU.  On appeal, STA argues that we should follow the

First and Sixth Circuits, and afford transit agencies a degree of deference in the application of their advertising policies.

We reject STA's argument because we have consistently held that we must independently review the record, without deference to the assessment made by transit officials, to determine whether a transit agency reasonably applied its advertising policy. *See Am. Freedom Def. Initiative v. King Cty.* (*AFDI II*), 904 F.3d 1126, 1134 (9th Cir. 2018); *Seattle Mideast Awareness Campaign v. King Cty.* (*SeaMAC*), 781 F.3d 489, 500–01 (9th Cir. 2015). Applying the appropriate limited public forum test from these recent transit agency cases, we affirm the district court's judgment.[1]

## I.

ATU is a 501(c)(5)-registered nonprofit union that represents all transit operators, maintenance, clerical and customer service employees at STA in Spokane, Washington. Since at least 2008, all STA buses have carried stickers on the inside displaying ATU's logo and stating, "This vehicle is operated and maintained by union members Amalgamated Transit Union AFL CIO/CLC." In exchange for dues charged to its members, ATU provides collective bargaining services, contract enforcement and assistance in

---

[1] STA appealed both the district court's permanent injunction and award of attorneys' fees to ATU, but has raised arguments challenging only the district court's judgment. STA does not otherwise contest the injunction or attorneys' fees. Accordingly, because we affirm the judgment, we affirm the district court's orders as to the permanent injunction and award of attorneys' fees. *See Harper v. City of L.A.*, 533 F.3d 1010, 1015 n.2 (9th Cir. 2008).

organizing new members. It also engages in advertising to promote ATU and reach new workers to help organize.

STA provides public transportation in the Spokane, Washington region. It runs an advertising program to generate non-tax revenue. Under its former Vehicle and Facilities Advertising Policy, STA confronted complaints and operational disruptions during several episodes involving controversial bus ads. For instance, in 2009, the United Food and Commercial Workers ("UFCW") Local 1439 ran attack ads against two local grocery chains, Albertsons and Fred Meyer. In response, STA received complaints from customers about these ads. And one driver expressed concern that STA was sending conflicting messages by running anti-Fred Meyer ads while still serving bus stops near Fred Meyer locations.

In 2011, the Coalition of Reason ran an ad on STA buses stating, "Are you good without God? Millions Are." STA received more complaints than normal, both before and after the ad appeared on STA buses. The media attention and public response negatively affected operations by creating negative perceptions, prompting statements from people about no longer using STA's service and generating unease amongst STA's bus operators and customer service representatives.

Concerned about funding and the potential impact of customer unhappiness on bus operators, STA's board adopted the current Commercial Advertising Policy ("Ad Policy") in late 2012, placing more limits on advertising content than under its prior policy.

The Ad Policy permits advertising space for only two types of ads, "commercial and promotional advertising" and

"public service announcements."   "Commercial and promotional advertising" is defined as advertising that:

> [P]romotes or solicits the sale, rental, distribution or availability of goods, services, food, entertainment, events, programs, transaction [sic], donations, products or property for commercial purposes or more generally promotes an entity that engages in such activity.

For both "commercial and promotional advertising" and "public service announcements," the Ad Policy prohibits certain categories of content.  Most relevant here, the Ad Policy prohibits "public issue" advertising, defined as advertising "expressing or advocating an opinion, position, or viewpoint on matters of public debate about economic, political, religious or social issues."

When ATU sought to place its ad, Ooh! Media LLC was STA's advertising contractor.  Ooh! Media made the initial determination of whether a proposed ad complied with the Ad Policy.  If it was unable to make a determination, then the decision was referred to the Director of Communications.  STA's Chief Executive Officer ("CEO"), however, had the final word on advertising content.  STA's board has not issued any guidance on how the "public issue" prohibition should be interpreted, but STA's CEO interprets "public issue" to constitute "subjects on buses that would create a negative impression of the organization that would be hard on [its] employees and hard on the organization."

Shortly after the Ad Policy was adopted, the Seventh Day Adventist Church of Spokane proposed a series of ads for STA buses stating, "Jesus Cares About Your Future,"

"You Matter to Jesus," and "Jesus Head of Lost and Found." Ooh! Media rejected the proposed ads, prompting a letter and public records request from the church's advertising agent for an explanation of the rejection.  STA and the church then worked together on creating an ad that STA determined complied with the Ad Policy.  The revised ads stated, "YOU MATTER TO SOMEONE," "SOMEONE CARES ABOUT YOUR FUTURE," and "WE CARE ABOUT YOU."  A separate ad depicted only the church's website.  STA considered these ads to be "public service announcements" that did not take a position on a "public issue."

In the summer of 2016, after approval from the contractor Ooh! Media, UFCW Local 1439 ran a series of ads on STA buses.  These ads stated, "GET UNITED!" along with other messages such as "Get the wages, healthcare, and safe working conditions you deserve, for a happier home life," "Stand up & have a voice in your workplace . . . for better wages, healthcare, and a happier home life!" and "Union workers banding together have better healthcare, wages, working conditions, & a happier home life."  The ads were meant to promote services that UFCW Local 1439 provides to workers.  STA never received a complaint about these ads.  Upon seeing them, however, STA's CEO had the UFCW Local 1439 ads removed because she interpreted them to constitute "public issue" advertising.

In August 2016, ATU's President and Business Agent, Thomas Leighty, contacted Ooh! Media about running bus ads to promote ATU and urge others to organize.  Leighty was inspired by the UFCW Local 1439 ads, although he learned upon contacting UFCW Local 1439 that its ads had been taken down and that UFCW Local 1439 was no longer

allowed to advertise.  Nonetheless, Leighty emailed Ooh!
Media, who responded by sending a copy of STA's Ad
Policy.  Leighty proposed that ATU could run its ad under
"commercial and promotional advertising."  Ooh! Media
responded that ATU's proposed ads were solicitations to join
a union, and therefore neither had a commercial purpose nor
promoted an entity that engages in commercial activity.

As a result of this exchange, ATU sent STA a letter,
conveying its concern that the Ad Policy excluded unions
and was not legal.  Hoping to resolve any misunderstandings
that it was anti-union, STA officials met with ATU
representatives and asked the union to submit an ad copy to
Ooh! Media with the goal of creating an ad with acceptable
content, as had been arranged with the Seventh Day
Adventist Church of Spokane.

Following the meeting, ATU submitted a proposed ad to
Ooh! Media that stated, "Do you drive: Uber? Lyft? Charter
Bus? School Bus?  You have the Right to Organize!  Contact
ATU 1015 Today at 509-395-2955."    The ad also
prominently featured ATU's logo.[2]  In October 2016, Ooh!
Media informed ATU that they were ready to move forward
with the ad and offered a pricing rate.  Later that same day,
Ooh! Media reached out to explain they were delayed in
securing final approval from STA.

About a month later, ATU inquired of STA about the
delay in reviewing its proposed ad, to which STA responded
that it had terminated its contract with Ooh! Media and was
no longer accepting new ads until it chose a new advertising
vendor through a public proposal process.  STA explained it

---

[2] A copy of the proposed ad is displayed in the attached Appendix.

terminated the contract based on Ooh! Media's repeated errors in applying the Ad Policy to proposed ads.

Following this rejection, ATU filed a lawsuit against STA in district court, alleging violations of its rights under the First and Fourteenth Amendments. ATU alleged that STA committed viewpoint discrimination by prohibiting only labor organizations from placing ads that promote the availability of their services and from making public service announcements. It also alleged that the content restriction was unreasonable as applied to ATU's ad.

After the district court denied STA's motion to dismiss, the parties stipulated to an expedited court trial. At trial, three witnesses testified to the facts recounted above: Leighty, ATU's President; Elizabeth Susan Meyer, STA's CEO; and Steve Blaska, STA's Director of Operations.

After the trial, the district court reached the following conclusions: First, it rejected STA's argument that the court should give deference to STA in applying its Ad Policy. Second, the court found that STA did not engage in viewpoint discrimination. Third, it concluded that ATU's proposed ad did not constitute "public issue" advertising prohibited by the Ad Policy and that STA's determination to the contrary was an unreasonable application of the Ad Policy. Finally, the court concluded that ATU's proposed ad qualified as "commercial and promotional advertising" as defined in the policy and, therefore, STA's determination to the contrary was an unreasonable application of the Ad Policy. Given these rulings, the district court concluded that STA violated ATU's First Amendment rights by rejecting the proposed ad. The court did not address whether ATU's proposed ad could run as a public service announcement.

After issuing its findings of fact and conclusions of law, the district court entered a permanent injunction, enjoining STA, if it resumes its advertising program, from rejecting ATU's proposed ad, subject to reasonable and appropriate artistic modifications.[3]    The district court also granted ATU's petition for attorneys' fees under 42 U.S.C. § 1988. STA timely appealed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review questions of law de novo and findings of fact for clear error.  *See Am. Beverage Ass'n v. City & Cty. of S.F.*, 916 F.3d 749, 754 (9th Cir. 2019) (en banc).

## III.

STA raises three issues with the district court's judgment.  First, STA argues that the district court should have extended a level of deference to STA's application of its advertising policy as the First and Sixth Circuits have done in similar circumstances.  *See Am. Freedom Def. Initiative v. Mass. Bay Transp. Auth.*, 781 F.3d 571, 587–88 (1st Cir. 2015); *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 698 F.3d 885, 893–94 (6th Cir. 2012).    Second, STA argues that—even without deference—its decision to reject ATU's ad as "public issue" advertising was reasonable because the ad could reasonably be interpreted as a foray into the public debate between labor

---

[3] Under the terms of the injunction, STA is not required to accept or run the ATU ad while its advertising program is suspended, and the injunction remains in effect as long as STA maintains its Ad Policy in its current form.  Nothing in the district court's order prohibits STA from revising its advertising policies.

unions and opposition groups, and might provoke responses from the "right to work" movement.  Lastly, STA argues that it reasonably concluded that ATU's ad did not qualify as "commercial and promotional advertising" because the ad's goal was to advise workers of their right to organize into a labor union, and that this was too attenuated from the promotion of commercial transactions.

We address each argument in turn and reject all three.

**A.**

The First Amendment inquiry begins with identifying the type of forum under review, either "traditional public forums, designated public forums, [or] limited public forums."  *SeaMAC*, 781 F.3d at 496.  "In traditional and designated public forums, content-based restrictions on speech are prohibited, unless they satisfy strict scrutiny." *Id*. "In limited public forums, content-based restrictions are permissible, as long as they are reasonable and viewpoint neutral." *Id*.

The parties agree that we classify STA's bus advertising program as a "limited public forum."[4]  *See id*. at 495–99 (holding that a metro bus advertising program was a limited public forum); *see also Am. Freedom Def. Initiative v. King Cty.* (*AFDI I*), 796 F.3d 1165, 1168–70 (9th Cir. 2015)

---

[4] "Limited public forums" have also been referred to as "nonpublic forums" interchangeably.  *AFDI I*, 796 F.3d at 1169 n.1.

(applying *SeaMAC* to conclude the same for King County Metro's bus advertising program).[5]

Because STA's advertising program constitutes a limited public forum, its rejection of ATU's proposed ad "must be reasonable and viewpoint neutral." *AFDI I*, 796 F.3d at 1170. There are three components of the reasonableness requirement: (1) "whether [the policy] standard is reasonable 'in light of the purpose served by the forum'"; (2) whether "the standard [is] 'sufficiently definite and objective to prevent arbitrary or discriminatory enforcement by [the government] officials'"; (3) and "whether an independent review of the record supports [the agency]'s conclusion" that the ad is prohibited by the agency's policy. *Id.* at 1170–71 (quoting *SeaMAC*, 781 F.3d at 499–500).

---

[5] We acknowledge there is a circuit split over this classification. *See Am. Freedom Def. Initiative v. King County, Wash.*, 136 S. Ct. 1022, 1024–25 (2016) (Thomas, J., joined by Alito, J., dissenting from denial of certiorari) (describing how the Second, Sixth, Seventh and D.C. Circuits classify transit advertising as a designated public forum while the First and Ninth Circuits give transit authorities more leeway to limit speech by classifying such advertising as a limited public forum). The holding in *SeaMAC* was adopted over a vigorous dissent, which argued that because of the history and continuing practice in King County of accepting controversial ads, the advertising program should be classified as a designated public forum. *See* 781 F.3d at 504–08 (Christen, J., dissenting). Even if we were not limited by *SeaMAC*, STA's bus advertising program would still qualify as a limited public forum. The circumstances surrounding the adoption of STA's Ad Policy in 2012 evince STA's intent to limit any potential negative impact on advertising revenues and avoid association with certain viewpoints on the ads. *See Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 976 (9th Cir. 1998) (describing how "a review of the city's standards and practices indicates that the city has not opened a public forum").

STA's argument relies on a misreading of the third prong of this test.  STA argues that we should afford its rejection of ATU's ad a degree of deference to be consistent with the general reasonableness standard applied to speech restrictions in limited public forums.  STA's argument, however, is squarely foreclosed by our precedent.**[6]**  *See AFDI II*, 904 F.3d at 1134; *AFDI I*, 796 F.3d at 1171; *SeaMAC*, 781 F.3d at 500–01.

In *SeaMAC*, King County Metro rejected an anti-Israel ad as prohibited material that would foreseeably result in disruption of the transportation system or incite a response that would threaten public safety.  781 F.3d at 493–95.  We held that "[w]e must independently review the record, without deference to the threat assessment made by County officials, to determine whether it 'show[s] that the asserted risks were real.'"  *Id*. at 500–01 (second alteration in original) (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 967 (9th Cir. 2002), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  In other words, we must independently review the record to determine whether it supports the reason for

---

**[6]** Moreover, the cases cited by STA discuss deference in analyzing the reasonableness of the *policy* behind the exclusion (the first prong) and not the reasonableness of the *application* of the policy (the third prong).  *See Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 683–85 (1992) (considering whether it was reasonable to ban solicitation from airport terminals); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808–09 (1985) (same for limiting federal charity program to health and welfare charities); *Lehman v. City of Shaker Heights*, 418 U.S. 298, 303–04 (1974) (same for bus advertising exclusion of political ads); *Children of the Rosary*, 154 F.3d at 978–79 (same for city limiting bus advertising to commercial advertising).  Thus, those cases are inapplicable to the as-applied challenge that ATU brings here.

applying the speech limitation.  In *SeaMAC*, we reviewed the record and agreed "that the threat of disruption . . . was real rather than speculative," and we proceeded to uphold the County's rejection of the ad.  *Id*. at 501.

We applied the same test in *AFDI I*.  There, King County Metro rejected an ad showing faces of suspected terrorists on the basis that Metro's contained factual inaccuracies and so fell within its prohibition of "false or misleading" ads. 796 F.3d at 1168.  On interlocutory appeal, we undertook "independent review of the record" and held that the third prong was satisfied because the two prominent statements in the proposed ad were indisputably false.  *Id*. at 1171.

When the case returned to us after summary judgment, King County Metro had rejected a revised version of the plaintiff's ad for different reasons from those in the first appeal.  *AFDI II*, 904 F.3d at 1129–30.  We rejected Metro's call for substantial deference and reversed after independent review of its decision.  *Id*. at 1134.  Metro had rejected the proposed ad as "harmful or disruptive" to the transit system.[7] *Id*. at 1133.  We reasoned that while the disruption clause was facially valid in light of the forum's purpose and had a sufficiently definite and objective standard, Metro's rejection was not supported by the record.  *Id*. at 1133–34. Although Metro's analysis "ha[d] some foundation," including an expert's report describing the invidious nature of similar ads, we ultimately concluded that "Metro's rejection of Plaintiffs' revised ad on the ground of disruption

---

[7] Metro had also rejected the ad under its "disparagement" clause but we held that this constituted impermissible viewpoint discrimination under the Supreme Court's recent decision in *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017).  *AFDI II*, 904 F.3d at 1131–33.

to the transit system was unreasonable." *Id*. at 1134. We relied on the fact that Metro had run an ad similar to the one at issue, and the earlier ad had not caused Metro's transit system to experience any harm, disruption or interference, disproving Metro's concerns about the rejected ad. *Id*. "Applying the disruption standard *without deference* to Metro's assessment," we concluded that Metro acted unreasonably. *Id*. (emphasis added).

STA provides no compelling reason to stray from this precedent.[8] Without intervening higher authority that is irreconcilable with *SeaMAC* and our transit agency cases, we must follow circuit precedent. *See Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc). Thus, we decline to adopt the First and Sixth Circuit approaches of

---

[8] Independent review here would also be consistent with our practice when reviewing the reasonableness of government speech limitations in other limited public forums. *See, e.g.*, *Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cty. Sch. Dist. No. 9*, 880 F.3d 1097, 1105–06 (9th Cir. 2018) (rejecting school district's justification that picketing ban was necessary because "there was no evidence that the policies were actually needed to prevent disruption"); *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1222–23 (9th Cir. 2003) (noting that CalTrans's proffered reasons for allowing flags, but not any other banners, to be displayed on highway overpasses was "patently unreasonable," in part because the agency "offer[ed] no credible evidence for its supposition that flags are less distracting than other types of banners"); *Sammartano*, 303 F.3d at 967–68 (finding "lack of support in the present record" to justify exclusion of articles of clothing with certain biker or gang symbols because there was no evidence of any disturbances or "tend[ancy] to incite problems in the courthouse" from the wearing of such clothing).

giving deference to a transit agency's application of its
advertising policy.

**B.**

We next apply the three-part test to review STA's
decision to exclude ATU's ad under "public issue"
advertising.[9]  At trial, STA's CEO characterized this policy
as a prohibition on ads that would generate "public interest
around issues about which there could be an economic,
social or political debate."

**i.**

First, the exclusion of "public issue" advertising must be
reasonable in light of the forum.  *AFDI I*, 796 F.3d at 1170.
"This requirement focuses on whether the exclusion is
consistent with 'limiting [the] forum to activities compatible
with the intended purpose of the property.'"  *SeaMAC*,
781 F.3d at 499 (alteration in original) (quoting *Perry Educ.
Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 49
(1983)).    "The advertising standards need only be
reasonable; they need not be the most reasonable or the only
reasonable limitation."  *Children of the Rosary*, 154 F.3d
at 978–79 (internal quotation marks and alteration omitted).

---

[9] The district court construed ATU's challenge as an as-applied one,
so it analyzed only the third part of the test—reasonableness of the
application of the policy.  ATU has not made clear whether it has
abandoned its facial challenge.  During oral argument, ATU argued that
it did not matter whether this is a facial or as-applied challenge, because
"words are only given meaning through their interpretation and
application."   ATU then expressed skepticism toward this "broad
policy."  Out of an abundance of caution, we address all three parts of
the limited public forum test.

At the outset, STA identified five interests behind the Ad Policy: maximization of revenues by advertising; maintenance of an orderly administration and operation of the Spokane transportation system, which includes maximizing revenues through passenger patronage; safety of passengers; protection of minors who travel in the system; and avoidance of any potential identification of STA with the viewpoints expressed in the advertisements. Similar to the motives behind the restrictions in prior transit agency cases, STA adopted its "public issue" advertising ban out of concern of losing ridership and revenue, as well as service disruptions and the negative association of STA with controversial subjects. *See SeaMAC*, 781 F.3d at 500 (upholding ban on "[a]ny speech that will foreseeably result in harm to, disruption of, or interference with the transportation system" since that is "compatible with the intended purpose of the property," the buses (quotation omitted)); *Children of the Rosary*, 154 F.3d at 979 (noting that "[t]he city's interests in protecting revenue and maintaining neutrality on political and religious issues are especially strong"); *see also Lehman*, 418 U.S. at 303–04 (upholding ban on political advertising inside buses after noting that the advertising space "is a part of the commercial venture" in providing transportation services and that "a city transit system has discretion to develop and make reasonable choices concerning the type of advertising that may be displayed in its vehicles").

Because STA's concern with engaging in matters of public debate is related to the purpose of running an efficient and profitable transit system, we conclude the policy is reasonable in light of the forum.

**ii.**

We next ask whether the "public issue" standard is sufficiently definite and objective to prevent arbitrary or discriminatory enforcement.  *AFDI I*, 796 F.3d at 1170. "Absent objective standards, government officials may use their discretion to interpret the policy as a pretext for censorship." *Hopper v. City of Pasco*, 241 F.3d 1067, 1077 (9th Cir. 2001).   Thus far, we have approved policies limiting advertising to commercial advertising, *see Children of the Rosary*, 154 F.3d at 982–83, excluding content likely to cause disruption, *see SeaMAC*, 781 F.3d at 500, and excluding false or misleading information, *see AFDI I*, 796 F.3d at 1170–71.  We have yet to address a "public issue" policy like the one before us.

Because ATU does not challenge the trial court's conclusion that STA's policy is definite and objective, we need not address this prong in depth.  We are skeptical, however, that STA's "public issue" standard would survive a facial challenge.

Beyond the definition in the Ad Policy, STA provides no written guidance on how to assess whether an ad might express or advocate "an opinion, position, or viewpoint on matters of public debate about economic, political, religious or social issues."  STA's CEO is the final arbitrator on what constitutes "public issue" advertising, but her standard seems entirely driven by what *she* believes would reflect badly on STA.  As the district court pointed out, "[t]o the extent that STA's position suggests the prohibition applies to any advertisement touching on any issue having any level of public debate, such an interpretation is unreasonable"

given that "[f]or most every good or service, there is some level of debate."[10]

On the one hand, a transit agency could construe the right to organize as a statement of fact.  *See* 29 U.S.C. § 157 ("Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing . . . and shall also have the right to refrain from any or all such activities.").  On the other hand, STA insists that such an ad might prompt a response from the "right to work" movement and would thus cause "highly emotional debate." STA's broadly phrased policy provides no guidance as to how to discern between the two interpretations.

For that reason, STA's "public issue" standard is unlike the standard we addressed in *SeaMAC*, which excluded speech that was "so objectionable under contemporary community standards as to be reasonably foreseeable that it will result in harm to, disruption of, or interference with the transportation system."  781 F.3d at 500.  Even though the "objectionable" prong, standing alone, "would be too vague and subjective to be constitutionally applied," we

---

[10] For instance, under STA's broad prohibition of "public issue" advertising, there is no principled way of discerning whether or not STA would accept or reject ads about potentially controversial topics, such as Nike's sponsorship of Colin Kaepernick, *see* Kevin Draper & Ken Belson, *Colin Kaepernick's Nike Campaign Keeps N.F.L. Anthem Kneeling in Spotlight*, N.Y. Times (Sept. 3, 2018), https://www.nytimes.com/2018/09/03/sports/kaepernick-nike.html, or businesses associated with the President, *see* Matthew Reisen, *UNM Draws Fire Over Ad for Trump Hotels*, Albuquerque Journal (Feb. 2, 2019), https://www.abqjournal.com/1276266/unm-draws-fire-over-ad-for-trump-hotels.html.

determined that the impact on the transit system provided a sufficiently "definite and objective benchmark against which to judge the 'disruption' assessments made by County officials." *Id.*  Conversely, STA's standard lacks objective criteria to provide guideposts for determining what constitutes prohibited "public issue" advertising.

### iii.

All parties agree that the case turns on the third prong of the test.  We agree with the district court that, based on an independent review of the record, STA's application of its "public issue" advertising ban to exclude ATU's proposed ad is unreasonable. *See AFDI II*, 904 F.3d at 1134.

STA characterizes any ad referencing "collective bargaining, worker organization and worker representation" as "a matter of public debate" because of the debate between the right to organize and right to work.  At trial, STA's CEO expressed concerns that the right to organize includes worker representation and collective bargaining, which constitute economic, social and political issues.  She testified that accepting the ATU ad could reflect badly on STA because "[a]ny time there is a conflict or a public debate on something, about something that has been on our buses, it has the potential to impact the community's perception of us."  Lastly, STA asserts that if it were to accept ATU's ad, it would be required to accept any inflammatory anti-organizing ad from an anti-union organization.

STA points to its history with union attack ads against local employers to justify its apprehension with ATU's ad.  Other aspects of the record, however, disprove STA's concerns.  For instance, STA buses have, since 2008, carried stickers on the inside displaying ATU's logo and stating,

"This vehicle is operated and maintained by union members Amalgamated Transit Union AFL CIO/CLC." These stickers never elicited a complaint. Moreover, during the time that STA ran the UFCW Local 1439 "Get United!" ads in 2016, STA never received a complaint about them either. ATU's proposed "You Have the Right to Organize!" ad conveys a similar message as UFCW Local 1439's "Get United!" ad, and they are both distinguishable from the perceived hostile attack ads against Fred Meyer and Albertsons. Yet, STA's CEO feared that riders would still perceive STA as wading into a public issue that reflected badly on the transit agency.

As was the situation in *AFDI II*, "we have an unusual opportunity to test [the agency]'s hypothesis," 904 F.3d at 1134, about the potential negative consequences from running a union promotional ad because STA ran such an ad before rejecting ATU's. The record does not suggest that ATU's "You Have the Right to Organize!" ad would cause conflict or debate to the detriment of STA because neither the ATU stickers nor the UFCW Local 1439 "Get United!" ads prompted any complaints. *See id*.; *see also Lehman*, 418 U.S. at 303 (holding that "the policies and practices governing access to the transit system's advertising space must not be arbitrary, capricious, or invidious").

Because STA's rejection of ATU's ad as "public issue" advertising is not supported by the record, we affirm the

district court's conclusion that it was unreasonable for STA to apply that policy to reject ATU's ad.[11]

## C.

Lastly, we must decide whether STA properly rejected ATU's proposed ad because it did not qualify as "commercial and promotional advertising."[12]

The first two prongs of the three-part test are easily met. We already have held that a ban on noncommercial advertising from a bus advertising program "is reasonable in light of the interests asserted" by the government agency. *See Children of the Rosary*, 154 F.3d at 979 (noting that "[t]he city's interest in protecting revenue and maintaining neutrality on political and religious issues are especially strong"). We also have no trouble concluding that STA's standard is sufficiently definite and objective. In *Children of the Rosary*, we dismissed assertions that the commercial advertising standard is overbroad, under-inclusive, or vague. *Id*. at 982–83.

The parties contest the third prong: whether STA properly applied the policy to exclude ATU's proposed ad. STA relies on *Children of the Rosary*, in which we upheld the exclusion of a civil rights organization and anti-abortion organization's ads because they did not *only* propose a

---

[11] Because we affirm the district court on this ground, we do not address ATU's alternative argument that STA's rejection of its ad was motivated by viewpoint discrimination.

[12] The parties agree that ATU could not run a public service announcement as it is neither a registered 501(c)(3) entity nor a government entity.

commercial transaction and hence failed the test for commercial speech. *Id*. at 982. According to STA, ATU's ad also does not qualify as commercial advertising because it does not promote commercial products or services but, rather, promotes the cause of organizing amongst workers. STA points to testimony that ATU provides its services without the express goal of collecting members' fees and does not charge a fee for any of its services in navigating the process of forming a labor union.

STA's argument, however, overlooks the difference between the scope of "commercial and promotional advertising" in the Ad Policy compared to the commercial advertising policy in *Children of the Rosary*. There, the city explicitly adopted the Supreme Court's standard for identifying commercial speech, limiting bus advertisements to those that *only* propose a legitimate commercial transaction. *Id*. at 975, 983 & n.4. But STA did not adopt such a policy. STA's definition of "commercial and promotional advertising" is broader, allowing for advertising that "more generally promotes an entity that engages in such [commercial] activity." It need not strictly propose a commercial transaction. Thus, STA's rationale for rejecting ATU's ad is belied by the breadth of its own policy.

As the district court pointed out, STA recognizes that ATU engages in interstate commerce, and ATU's activities are ultimately geared toward changing the labor and commercial markets to the benefit of its members. STA relies heavily on the fact that ATU does not collect fees while helping workers organize or may never collect fees if the organizing effort fails. By that logic, however, STA's policy would also exclude ads from entities which would otherwise likely be considered "commercial and

promotional advertising," such as: law firms who provide legal services for contingency fees; social media platforms that do not charge fees to users but generate profit from widening their user base; and business leagues, real estate boards, and other 501(c)(6)-registered organizations that have a commercial purpose.

Because ATU's ad promotes an organization that engages in commercial activity, STA unreasonably applied its "commercial and promotional advertising" policy to reject ATU's ad.

## IV.

We have designated a transit agency's advertising program to be limited public forums because we recognize the legitimate concerns with transportation services and safety. This does not mean, however, that courts should abdicate their role in protecting the First Amendment rights of those seeking access to that advertising space. Because neither of STA's reasons for rejecting ATU's proposed ad is supported by an independent review of the record, we affirm the district court's judgment that STA violated ATU's First Amendment rights, as well as the permanent injunction and award of attorneys' fees to ATU.

**AFFIRMED.**

# APPENDIX

