**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LIBERTARIAN PARTY OF LOS ANGELES COUNTY; THEODORE BROWN; and CHRISTOPHER AGRELLA, *Plaintiffs-Appellants*, <br><br> v. <br><br> DEBRA BOWEN, in her official capacity as Secretary of State of California, *Defendant-Appellee*. | No. 11-55316 <br><br> D.C. No. 2:10-cv-02488-PSG-OP <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued May 9, 2012
Resubmitted February 25, 2013
Pasadena, California

Filed March 6, 2013

Before: Harry Pregerson, Susan P. Graber,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Graber

## SUMMARY[*]

### Civil Rights

The panel reversed the district court's dismissal of a 42 U.S.C. § 1983 complaint challenging California Elections Code sections 8066 and 8451, which mandate that "circulators," who gather signatures from registered voters for a candidate's nomination papers, must reside in the political subdivision where they are gathering signatures.

The panel held that the district court erred by dismissing plaintiffs' pre-enforcement challenge for lack of standing. The panel held in light of plaintiffs' concrete plan to violate the law and defendants' communication of a specific warning of a threat of enforcement, plaintiffs had met the constitutional case or controversy requirement. The panel remanded for further proceedings.

### COUNSEL

Robert G. Bernhoft and Daniel J. Treuden, The Bernhoft Law Firm, S.C., Milwaukee, Wisconsin, for Plaintiffs-Appellants.

Michael Glenn Witmer, Deputy Attorney General, Los Angeles, California, for Defendant-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

GRABER, Circuit Judge:

To qualify for the ballot in California, political candidates must file a "nomination paper" that includes a certain number of signatures from registered voters. Cal. Elec. Code §§ 8062, 8409. Commonly, candidates appoint persons, known in California as "circulators," to circulate the nomination paper for the purpose of gathering signatures. At issue here are California Elections Code sections 8066 and 8451, which mandate that "[c]irculators shall be voters in the district or political subdivision in which the candidate is to be voted on and shall serve only in that district or political subdivision." Plaintiffs Libertarian Party of Los Angeles County, Theodore Brown, and Christopher Agrella brought this pre-enforcement action under 42 U.S.C. § 1983 against Defendant Debra Bowen, California Secretary of State. Plaintiffs allege that the residency requirement violates the First and Fourteenth Amendments and, accordingly, seek to enjoin its enforcement.

Plaintiff Libertarian Party of Los Angeles County would like to use circulators who reside in counties other than Los Angeles County to gather signatures for candidates in that county. Plaintiffs Brown and Agrella live in California and would like to serve as circulators in political subdivisions other than their own. Plaintiffs have refrained from doing so because they fear enforcement, including criminal penalties, of the California Elections Code. The district court dismissed the complaint on the ground that Plaintiffs lack standing. Reviewing de novo, *Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 506 (9th Cir. 1992), we hold that Plaintiffs have alleged a sufficient injury-in-fact to meet

constitutional standing requirements. Accordingly, we reverse and remand for proceedings on the merits.[1]

We have jurisdiction only over claims that present a "case or controversy." *Allen v. Wright*, 468 U.S. 737, 750 (1984). To meet that requirement, Plaintiffs must establish that they have suffered an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[2] In this pre-enforcement action, Plaintiffs "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). But Plaintiffs "do[] not have to await the consummation of threatened injury to obtain preventive relief." *Id.* (internal quotation marks omitted). "It is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154–55 (9th Cir. 2000) (internal quotation marks omitted).

First Amendment challenges, such as Plaintiffs' here, "present unique standing considerations" such that "the inquiry tilts dramatically toward a finding of standing." *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (internal quotation marks omitted). That is so because, as the Supreme Court has recognized, a chilling of the exercise of First Amendment

---

[1] Because the issue is not before us, we express no view on the merits of Plaintiffs' constitutional challenge.

[2] Plaintiffs also must demonstrate causation and redressability. *Lujan*, 504 U.S. at 560–61. Those requirements are met here.

rights is, itself, a constitutionally sufficient injury. *Id.*; *see Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010) ("[W]hen a challenged statute risks chilling the exercise of First Amendment rights, the Supreme Court has dispensed with rigid standing requirements and recognized 'self-censorship' as a harm that can be realized even without an actual prosecution." (citations and internal quotation marks omitted)). "[W]here a plaintiff has refrained from engaging in expressive activity for fear of prosecution under the challenged statute, such self-censorship is a constitutionally sufficient injury as long as it is based on an actual and well-founded fear that the challenged statute will be enforced." *Human Life*, 624 F.3d at 1001 (internal quotation marks omitted).[3]

"In evaluating the genuineness of a claimed threat of prosecution, courts examine three factors:  (1) whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." *McCormack v. Hiedeman*, 694 F.3d 1004, 1021 (9th Cir. 2012) (internal quotation marks omitted).

Plaintiffs have a "concrete plan."  For example, Plaintiff Agrella alleges that he was "a candidate for the House of Representatives[] who circulated petitions in his own behalf

---

[3] The Supreme Court's recent decision in *Clapper v. Amnesty International USA*, No. 11-1025, 2013 WL 673253 (U.S. Feb. 26, 2013), does not change our analysis.  Unlike in *Clapper*, Plaintiffs' fear of enforcement here is actual and well-founded and does not involve a "highly attenuated chain of possibilities." *Id.* at *8.

in this last election cycle, but was barred from circulating petitions for a state senate candidate that overlaps his district because he does not reside within the state senate district for which that candidate was running." He also alleges that he intends to gather signatures for such candidates in future elections but will be prohibited by state law from doing so. Unlike the plaintiffs' vague plan in *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc), which did not specify "when, to whom, where, or under what circumstances" they intended to violate the challenged statute, Plaintiff Agrella's plan answers those questions: In the next election, he will support the state senate candidate in the district that overlaps with his House district. *See ACLU of Nev. v. Heller*, 378 F.3d 979, 984–85 (9th Cir. 2004) (holding that the plaintiffs' plan "to circulate petitions to place certain referendum measures on statewide or local ballots" was sufficiently concrete to support Article III jurisdiction).

We also conclude that Defendant has communicated a specific warning or threat of enforcement. Defendant has posted on her website a set of instructions for political candidates labeled "Summary of Qualifications and Requirements for Partisan Nomination for the Offices of State Senator [and] Member of the Assembly." Under the section titled "Requirements," the instructions mandate that "[c]irculators shall be voters in the district or political subdivision in which the candidate is to be voted on and shall serve only in that district or political subdivision." Those instructions go beyond "the mere existence of a proscriptive statute," which we have held is insufficient to satisfy the "case or controversy" requirement. *Thomas*, 220 F.3d at 1139. The Secretary has exercised her discretion to include

this specific requirement in her instructions to candidates and to frame the requirement in absolute terms.

In that regard, a different section of the instructions strongly suggests that Defendant *will enforce* the provision. In the section that lists the qualifications for candidacy, the Secretary chose to omit a residency requirement for candidates—mandated by the California Constitution—from the instructions' list of candidate qualifications. Instead, she wrote in a footnote that, although the California Constitution includes the candidate residency requirement, "it is the legal opinion of this office that these provisions violate the U.S. Constitution and are *unenforceable*." (Emphasis added.) No similar disclaimer appears in connection with the challenged criterion.

Defendant argues that, even though the instructions include the requirement, Plaintiffs (and all other potential circulators) should not feel threatened by enforcement because of a legal memorandum by her office originally written in 1980 and reiterated in 2010. As Defendant points out, the memorandum instructs county, city, and district clerks that nomination papers "should not be marked insufficient solely because the circulator of the petition or paper is not a registered voter." Far from assuaging Plaintiffs' fears, however, the memorandum's concluding paragraph reinforces those fears:

> This is not to say, however, that the specific requirements of the Elections Code can be ignored. The Code clearly contemplates that circulators be registered voters and otherwise qualified and state the qualifications in the circulator's affidavit. A

circulator who completes a false affidavit is subject to criminal prosecution for perjury or, where applicable, violating Elections Code § 29780 [1980], and *suspected violators should be reported by local elections officials to the proper authorities*. Such a procedure properly punishes the errant circulator rather than the innocent petition or paper signer.

(Emphasis added.)[4]

In sum, Defendant has promulgated instructions for candidates that describe the mandatory qualifications of circulators, and she has advised them that any person filing a false affidavit should be reported to authorities for criminal investigation. In these circumstances, we hold that Defendant has communicated a specific warning or threat of enforcement.

The final factor—history of past prosecution or enforcement—does not support Plaintiffs' standing, because Defendant has never enforced the challenged provisions. But that factor alone is not dispositive. *Babbitt*, 442 U.S. at 302; *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010). Because the challenged provisions have not been "'commonly and notoriously' violated," the "record of non-enforcement" is not the end of the inquiry. *S.F. Cnty.*

---

[4] California Elections Code section 18203 provides that "[a]ny person who files or submits for filing a nomination paper . . . knowing that it or any part of it has been made falsely" has committed a crime. Plaintiffs have "an actual and well-founded fear," *Human Life*, 624 F.3d at 1001, that a circulator who knowingly attests that he or she meets the mandatory statutory requirements for circulating petitions when he or she does not will be prosecuted.

*Democratic Cent. Comm. v. Eu*, 826 F.2d 814, 822 & n.15 (9th Cir. 1987) (quoting *Poe v. Ullman*, 367 U.S. 497, 502 (1961)). In light of Plaintiffs' concrete plan and Defendant's specific threat of enforcement, we conclude that Plaintiffs have met the constitutional "case or controversy" requirement.[5]

**REVERSED and REMANDED.**

---

[5] For similar reasons, we decline to exercise our discretion to dismiss the case under prudential doctrines. *See Thomas*, 220 F.3d at 1138–42 (describing constitutional and prudential ripeness in this context).