**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE ANTONIO GARCIA, | No. 24-6814 |
| *Plaintiff - Appellant*, | D.C. No. 3:24-cv-03997-RS |
| v. | |
| COUNTY OF ALAMEDA; YESENIA SANCHEZ, | OPINION |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, Chief District Judge, Presiding

Argued and Submitted May 15, 2025
Pasadena, California

Filed September 4, 2025

Before: John B. Owens, Mark J. Bennett, and Holly A. Thomas, Circuit Judges.

Opinion by Judge H.A. Thomas

## SUMMARY[*]

### First Amendment

The panel reversed the district court's denial of a preliminary injunction and remanded with instructions to enter a preliminary injunction in favor of Jose Garcia, a reporter challenging the County of Alameda's ordinance prohibiting knowingly spectating a sideshow event conducted on a public street or highway from within 200 feet of that event.

The panel first held that Garcia had standing because his self-censorship satisfied Article III's injury-in-fact requirement.

The panel held that Garcia had shown a likelihood of success on the merits of his First Amendment as-applied challenge. The First Amendment protects Garcia's newsgathering and reporting activities, including recording events. Garcia's observation of sideshows is a predicate for, and thus inextricably intertwined with, his recording of those events. The County's prohibition on knowingly spectating a sideshow is content based because it targets only one topic, sideshows, making it a misdemeanor for any person to be present within 200 feet of a sideshow for the purpose of spectating the event. As a content-based restriction, the Ordinance is subject to strict scrutiny. The Ordinance fails strict scrutiny because the County has existing, less restrictive alternatives that address its compelling interest in public safety. Moreover, the Ordinance is underinclusive

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

because it prohibits only spectating within 200 feet of a sideshow while permitting other activities within that 200-foot radius.

Addressing the remaining preliminary injunction factors, the panel held that (1) Garcia was likely to suffer irreparable harm because loss of First Amendment freedoms constitutes irreparable harm, and (2) the balance of equities tips in Garcia's favor and issuance of an injunction is in the public interest.

## COUNSEL

J. David Loy (argued) and Ann Cappetta, First Amendment Coalition, San Rafael, California, for Plaintiff-Appellant.

Aaron M. Stanton (argued) and Matthew D. Zinn, Shute Mihaly & Weinberger LLP, San Francisco, California, for Defendants-Appellees.

Grayson Clary, Mara Gassmann, and Renee M. Griffin, Reporters Committee for Freedom of the Press, Washington, D.C., for Amici Curiae the Reporters Committee for Freedom of the Press and Los Angeles Times Communications LLC.

## OPINION

H.A. THOMAS, Circuit Judge:

Driven by concerns over unmanageable crowds, property damage, noise pollution, garbage, firearms use, and reckless driving under the influence of drugs and alcohol, the Board of Supervisors of the County of Alameda, California ("County") adopted an ordinance prohibiting any person from knowingly spectating a sideshow event conducted on a public street or highway from within 200 feet of that event. Possible penalties include both imprisonment and a monetary fine. In this pre-enforcement suit, Jose Antonio Garcia, a reporter who writes about sideshows for *The Oaklandside* under the pen name Jose Fermoso, raises a First Amendment challenge to the County's prohibition as applied to his reporting activities. Although, prior to the law's passage, Garcia regularly reported on sideshows and planned to conduct on-site reporting about such events, he cancelled those plans after the ordinance went into effect for fear of citation, arrest, and criminal prosecution.

The district court denied Garcia's motion for a preliminary injunction, concluding that the First Amendment did not apply to his newsgathering and reporting activities. In the alternative, the court determined that the County's prohibition on knowingly spectating sideshows was content neutral and survived intermediate scrutiny.

We disagree. The First Amendment protects Garcia's newsgathering and reporting activities. And the County's prohibition on knowingly spectating a sideshow is content based and fails strict scrutiny. Garcia has clearly demonstrated that he is likely to succeed on the merits of his

as-applied challenge, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that the issuance of an injunction is in the public interest. We therefore reverse the district court's denial of a preliminary injunction on Garcia's as applied challenge, and remand with instructions to enter a preliminary injunction in favor of Garcia.

## I.

### A.

Garcia is a reporter who covers road safety, transportation, and public health topics for *The Oaklandside*, a nonprofit journalism platform. As part of his work, Garcia reports on sideshows, "controversial event[s] where drivers take over city intersections with their cars as they skid in circles while performing stunts." Garcia relies "on photographs, as well as video and audio recordings, in order to gather news and information and keep the public informed." It is important for Garcia to be able to "photograph, film, and record audio of the [sideshow] events, within 200 feet of the intersections where they occur," in order "to convey adequately detailed visual and auditory context that can enhance readers' comprehension of the matters reported."

In 2023, the County adopted Ordinance No. 2023-31 ("Ordinance"), which makes it a misdemeanor for "any person to knowingly be a spectator at a sideshow event conducted on a public street or highway" or for "any person to knowingly be a spectator at the location of preparations for a sideshow event on a public street or highway." Alameda County Code ("ACC") § 10.40.030(A)–(B). A violation of the Ordinance is "punishable by imprisonment

not exceeding three months or by fine not exceeding one thousand dollars ($1,000.00) or by both." *Id.* § 10.40.050.

The Ordinance defines a "sideshow" as "an occasion where one or more persons, for the purpose of performing a street race or reckless driving exhibition for one or more spectator(s) either blocks or impedes traffic on a street or highway." *Id.* § 10.40.020. A "spectator" is defined as "any person who is present at a sideshow event, or the site of the preparations for a sideshow event, for the purpose of viewing, observing, watching, or witnessing the sideshow event as it progresses." *Id.* A person is "present" at "a sideshow event if that person is within two hundred (200) feet of the location of the sideshow event, or within two hundred (200) feet of the site of the preparations for any sideshow event." *Id.*

In adopting the Ordinance, the County found that sideshows "cause significant damage" to infrastructure and "create an unsafe environment" due to reckless driving and attendees who are "under the influence of drugs and alcohol." *Id.* § 10.40.10(A), (C) (findings). The County also found that sideshows have been "associated with the discharge of firearms" and cause "damage to vehicles and private and public property, reduced air quality due to the smoke released by burning rubber tires, noise pollution, and unmanageable crowds that leave behind garbage." *Id.* § 10.40.10(C), (D). The County further found that "vehicles at sideshows have caused great bodily injury and death to spectators." *Id.* § 10.40.10(F).

Before the County adopted the Ordinance, Garcia had published an article in *The Oaklandside* mapping every report of a sideshow made to Oakland police from January 2019 to November 2022. After enjoying a substantial public

response to his reporting, Garcia planned to conduct on-site reporting on sideshows, including by personally observing and recording sideshows in Oakland and unincorporated Alameda County. But Garcia cancelled these plans after the County's passage of the Ordinance. Perceiving that the definition of "spectator" in the Ordinance applied to the type of on-site reporting activities he planned to conduct, he "feared citation, arrest, and criminal prosecution" if he continued as planned. As a result, Garcia alleges that he has been "unable to engage in effective firsthand observation" and recording of Alameda County sideshows—which, despite passage of the Ordinance, continue to occur regularly.

## B.

In July 2024, Garcia filed a complaint asserting that the Ordinance violates the First Amendment facially and as applied to his reporting activities. He subsequently sought a preliminary injunction on his as-applied challenge, "prohibiting the County from enforcing the Ordinance against him for observing, recording, or reporting on sideshows or related preparations in his capacity as a reporter."

The district court denied Garcia's motion. *See Garcia v. County of Alameda*, No. 24-cv-03997-RS, 2024 WL 4476659, at *7 (N.D. Cal. Oct. 11, 2024). Although the court found that Garcia had standing to pursue his claim, it held that the First Amendment did not apply to Garcia's case. *Id.* at *2–5. The court concluded that there is a First Amendment right to film matters of public interest, and that "recording is itself an inherently expressive activity," but the court found that Garcia's case did not involve an anti-recording component because the Ordinance did not specifically

prohibit the act of recording a sideshow. *Id.* at \*4–5 (citation omitted). And the court found that the conduct the Ordinance did prohibit—knowingly being present for the purpose of observing a sideshow—was "less about speech production and more about locational activity," which was "not conduct with a significantly expressive element." *Id.* at \*4. In the alternative, the court determined that the Ordinance is content neutral and survives intermediate scrutiny. *Id.* at \*5–7. The court reasoned that the Ordinance is "concerned with the location and purpose of an actor, not whether that actor speaks (and certainly not the content of any speech that occurs)." *Id.* at \*5.

## II.

We have jurisdiction under 28 U.S.C. § 1292(a)(1). "We review the denial of a preliminary injunction for abuse of discretion, but we review *de novo* the underlying issues of law." *Meinecke v. City of Seattle*, 99 F.4th 514, 520 (9th Cir. 2024). We review *de novo* questions of standing. *Isaacson v. Mayes*, 84 F.4th 1089, 1095 (9th Cir. 2023).

## III.

We first consider whether Garcia has alleged an injury-in-fact sufficient to establish Article III standing.

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (first alteration in original) (quoting *Friends of the Earth,*

*Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). To satisfy the injury-in-fact prong, a plaintiff must demonstrate "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). "[A] chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (quoting *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013)).

Although Garcia has not violated the Ordinance, he has been "forced to modify [his] speech and behavior to comply with" it by cancelling his plans to conduct on-site reporting at sideshow events. *See Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). Such "self-censorship" is sufficient to satisfy the injury-in-fact requirement, *id.*, and the County does not dispute that Garcia satisfies the remaining prongs of our standing analysis. The district court thus correctly determined that Garcia has standing.

IV.

We turn to whether Garcia is entitled to a preliminary injunction. "A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain a preliminary injunction, a plaintiff "must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.* at 346 (quoting *Winter*, 555 U.S. at 20).

We begin with the likelihood of success on the merits, which is "the most important factor" in determining whether a preliminary injunction is warranted. *Meinecke*, 99 F.4th at 521. "An as-applied First Amendment challenge," such as Garcia brings here, "contends that a given statute or regulation is unconstitutional as it has been applied to a litigant's particular speech activity." *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d 1084, 1096 (9th Cir. 2010). Our analysis of whether Garcia has demonstrated a likelihood of success on the merits of his challenge proceeds in three steps: "First, we must decide whether the relevant speech 'is protected by the First Amendment'; second, 'we must identify the nature of the forum'; and third, 'we must assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard.'" *Meinecke*, 99 F.4th at 521 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).

A.

We first consider whether Garcia's newsgathering and reporting activities constitute protected speech. "[A] government, including a municipal government vested with state authority, 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). "[P]ure speech is entitled to First Amendment protection unless it falls within one of the 'categories of speech . . . fully outside the protection of the First Amendment,'" none of which is at issue here. *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1058 (9th Cir. 2010) (second alteration in original) (quoting *United States v. Stevens*, 559 U.S. 460, 471 (2010)); *see also Counterman v. Colorado*, 600 U.S. 66, 73–74 (2023) (discussing unprotected categories of speech).

"The Supreme Court has recognized that newsgathering is an activity protected by the First Amendment." *United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978) (citing *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)). And we have determined both that the First Amendment protects recording and photographing "matters of public interest," *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018), and that an organization's "recording of conversations in connection with its newsgathering activities is protected speech within the meaning of the First Amendment," *Project Veritas v. Schmidt*, 125 F.4th 929, 943 (9th Cir. 2025) (en banc).[1] These holdings compel the conclusion that Garcia's newsgathering activities—the "quintessential function of a reporter"—are protected by the First Amendment. *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1125 (9th Cir. 2017).

The County argues that Garcia's "mere observation" of sideshows "is not expressive." But "[n]either the Supreme Court nor our court has ever drawn a distinction between the *process* of creating a form of pure speech (such as writing or painting) and the product of these processes (the essay or the artwork) in terms of the First Amendment protection afforded." *Project Veritas*, 125 F.4th at 944 (emphases added and omitted) (quoting *Anderson*, 621 F.3d at 1061); *see also Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018) ("It defies common sense to disaggregate the creation of the video from the video or audio recording itself.").[2] In other words, "[w]hether

---

[1] The County does not dispute that sideshows are a matter of public interest.

[2] We also explained in *Project Veritas*, however, that "*Wasden* did not conclude that every act of recording requires expressive decisions, nor

government regulation applies to creating, distributing, or consuming speech makes no difference" for purposes of our First Amendment analysis. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 792 n.1 (2011); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("[T]he creation and dissemination of information are speech within the meaning of the First Amendment.").

Here, Garcia's observation of sideshows is a predicate for, and thus inextricably intertwined with, his recording of those events. *See People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 829 (4th Cir. 2023) ("[S]cores of Supreme Court and circuit cases apply the First Amendment to safeguard the right to gather information as a predicate to speech."). If the County were permitted to carve out Garcia's observation of sideshows from his recording of those events, it could "effectively control or suppress speech by the simple expedient of restricting" a predicate for "the speech process rather than the end result." *Project Veritas*, 125 F.4th at 943 (quoting *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 597 (7th Cir. 2012)).

Citing the Supreme Court's decision in *Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986), the County argues that *Project Veritas* is distinguishable because the County's restriction on the observation of sideshows "involves only incidental restriction of . . . speech." In *Arcara*, the Court upheld against a First Amendment challenge a nuisance statute used to authorize the closure of an adult bookstore on the grounds that the store was the site of ongoing illicit sexual activities. *See* 478 U.S. at 706–07. The Court held that

---

that every act of recording implicates the First Amendment." 125 F.4th at 946.

"the First Amendment is not implicated by the enforcement of a public health regulation of general application against the physical premises in which respondents happen to sell books." *Id.* at 707. The Court noted that its decision would be different if "the 'nonspeech' which drew sanction was intimately related to expressive conduct protected under the First Amendment." *Id.* at 706 n.3. But because operating an establishment where prostitution is ongoing "bears absolutely no connection to any expressive activity," the Court upheld the closure order. *Id.*

*Arcara* is irrelevant to this case. Although the Ordinance "may be described as directed at conduct," as applied to Garcia, "the conduct triggering coverage under the [Ordinance] consists of communicating a message." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 28 (2010). Even if observation of a sideshow on its own terms is non-expressive conduct, because Garcia must observe sideshows in order to record them, the Ordinance "burdens [his] First Amendment rights directly, not incidentally." *Alvarez*, 679 F.3d at 603; *see also Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1070 n.4 (9th Cir. 2020) ("Even generally applicable laws can implicate First Amendment concerns . . . .").

The County further argues that if the panel agrees with Garcia, "a reporter could seek First Amendment review of speeding regulations preventing her from better filming car chases." But we have already made clear in *Project Veritas* that it is not the case that "any conduct related in some way to speech creation, however attenuated, is necessarily entitled to First Amendment protection." 125 F.4th at 944. "[W]e need not precisely delineate the extent and contours of First Amendment protection for each constituent act that comprises speech creation" to determine that Garcia's

conduct here—recording sideshows as a journalist for the purpose of reporting on them—falls under the ambit of the First Amendment. *Id.*

## B.

We need not belabor the second step in our analysis of whether Garcia is likely to succeed on the merits of his claim, an examination of the nature of the forum at issue. The parties do not dispute that public streets are traditional public forums. *See ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1099 (9th Cir. 2003) ("The quintessential traditional public forums are sidewalks, streets, and parks."); *see also Camenzind v. Cal. Exposition & State Fair*, 84 F.4th 1102, 1108 (9th Cir. 2023) ("The First Amendment affords special protection to 'places which by long tradition or by government fiat have been devoted to assembly and debate.'" (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983))).

## C.

We turn then to the final stage in our analysis of whether Garcia is likely to succeed on the merits of his claim, examining "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Hubbard v. City of San Diego*, 139 F.4th 843, 851 (9th Cir. 2025) (quoting *Cornelius*, 473 U.S. at 797). It is true that "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). But "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163; *see also Berger v.*

*City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc) ("A regulation is content-based if . . . the regulation, by its very terms, singles out particular content for differential treatment.").

### 1.

The Ordinance is content based. It targets only one topic, sideshows, making it a misdemeanor for any person to be present within 200 feet of a sideshow for the purpose of spectating the event. ACC § 10.40.030(A); *id.* § 10.40.020. The County does not dispute that a person can observe or record any other topic within that same 200-foot radius as long as they are not "knowingly present to watch the sideshow." *See Reed*, 576 U.S. at 163 ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."); *see also Wasden*, 878 F.3d at 1204 (holding that because an anti-recording law "prohibits the filming of agricultural 'operations' but nothing else, its application explicitly pivots on the content of the recording"). A law that "require[s] 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred" in the manner required by the Ordinance here is content based. *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984)); *cf. Project Veritas*, 125 F.4th at 950 ("A regulation may remain content neutral despite touching on content to distinguish between classes or types of speech—such as speech that constitutes solicitation or speech that draws neutral, location-based distinctions—so long as it does not discriminate on the basis of viewpoint or restrict discussion of an entire topic." (citations omitted)).

The County argues that "the Ordinance regulates *presence* in a particular location[,] . . . not speech." But this is incorrect. As discussed, the Ordinance does not apply to every person present within 200 feet of a sideshow. As the County has conceded, the Ordinance would not apply to Girl Scout troops who, innocent to a sideshow's occurrence, set up a table to sell cookies within 200 feet of a sideshow event. The Ordinance instead applies only to people present within that range who are knowing spectators of the sideshow. *Cf. McCullen*, 573 U.S. at 479–80 (holding that a statute creating a no-approach buffer zone around abortion clinics was content neutral where a person could "violate the [statute] merely by standing in [the] zone, without displaying a sign or uttering a word"). Because the Ordinance does not "require[] an examination of speech only in service of drawing neutral, location-based lines," it is not "agnostic as to content." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022).

2.

Because the Ordinance is content based, it does not qualify as a valid time, place, and manner restriction, and is presumptively unconstitutional. *See Reed*, 576 U.S. at 163; *Berger*, 569 F.3d at 1036. We will uphold it only if the County meets its burden of showing that the Ordinance "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171 (quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). "To be narrowly drawn, a 'curtailment of free speech must be actually necessary to the solution.'" *Twitter, Inc. v. Garland*, 61 F.4th 686, 698 (9th Cir. 2023) (quoting *Brown*, 564 U.S. at 799). "If a less restrictive alternative would serve the Government's purpose, the

legislature must use that alternative." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).

The Ordinance fails this analysis. Public safety is certainly a compelling interest, *see Meinecke*, 99 F.4th at 525, and the County cites important concerns about reckless driving, gun violence, illegal drug use, looting, destruction of public property, noise and air pollution, garbage, and traffic disruptions resulting from or accompanying sideshow events. But where a government "'has various other laws at its disposal that would allow it to achieve its stated interests while burdening little or no speech,' it fails to show that the law is the least restrictive means to protect its compelling interest." *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1126 (9th Cir. 2020) (quoting *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011) (en banc)). And, here, there are existing laws that address the County's stated concerns. *See, e.g.*, Cal. Penal Code §§ 187–89, 192 (murder or manslaughter); *id.* §§ 191.5, 192(c), 192.5 (vehicular manslaughter with or without intoxication); *id.* §§ 242–43, 245 (assault with a deadly weapon and battery); *id.* § 246.3 (discharge of firearms); *id.* § 374 (littering); *id.* § 415(2) (noise pollution); *id.* § 451 (arson); *id.* § 594 (vandalism and destroying infrastructure or other property); Cal. Veh. Code §§ 20001–02 (hit and run); *id.* § 22500 (blocking intersections); *id.* § 23103(a) (reckless driving in willful or wanton disregard for the safety of persons or property); *id.* § 23104 (reckless driving that proximately causes bodily injury or great bodily injury to a person other than the driver); *id.* § 23105 (reckless driving that injures a person other than the driver); *id.* §§ 23109, 23109.1, 23109.2 (speed contests with or without resulting injuries); *id.* § 23152 (driving under the influence

of drugs or alcohol); Cal. Penal Code § 182 (conspiracy to commit any of the foregoing offenses).

The Ordinance also "fail[s] as hopelessly underinclusive." *Reed*, 576 U.S. at 171. The County argues that "the Ordinance tries to stop people from placing themselves in the path of speeding cars, not to suppress speech about sideshows." Yet the County also acknowledges that, so long as they are not there to spectate, people can "ask for handouts," "advocate for fewer restrictions on sideshows," "stump for a candidate," or, yes, "sell girl scout cookies"—all within 200 feet of a sideshow. Indeed, the County concedes that even Garcia himself "may venture inside a 200-foot radius of a sideshow to interview residents, passersby, spectators, or even drivers, and to record these interviews."

The County contends that "spectators are at greater risk than those present for other reasons" because, "having sought out the sideshow, they are more likely to remain at the scene despite the dangers." But the County cites nothing in support of this argument, and there is no indication in the record that this is true. In particular, the County does not explain why people who might advocate for restrictions on sideshows or come to a sideshow to interview drivers would be any less likely to remain at the site of a sideshow than those there to participate in or observe the event. The lack of such evidence makes clear that the burden on speech imposed by the Ordinance is not "actually necessary to" solve the public safety problems associated with sideshows. *Brown*, 564 U.S. at 799. The Ordinance thus fails strict scrutiny, and Garcia has made a clear showing that he is likely to succeed on the merits of his as-applied First Amendment claim.

V.

We now consider the remaining *Winter* factors. "It is axiomatic that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 694 (9th Cir. 2023) (en banc) (alteration in original) (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020)). Because Garcia has demonstrated a likelihood of success on the merits of his First Amendment claim, he has satisfied the second *Winter* factor.

Garcia has also made a clear showing as to the last two *Winter* factors. "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—'merge.'" *Id.* at 695 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). That Garcia "ha[s] raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [his] favor." *Am. Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc) (second alteration in original) (quoting *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007)). And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

VI.

Garcia is likely to prevail on his as-applied challenge to the County's prohibition on knowingly spectating sideshows. We therefore **REVERSE** the district court's denial of a preliminary injunction and **REMAND** with instructions to enter a preliminary injunction in favor of Garcia on his as-applied challenge.